HEATHER FERBERT, City Attorney
M. TRAVIS PHELPS, Assistant City Attorney
STACY J. PLOTKIN-WOLFF, Senior Chief Deputy City Attorney
California State Bar No. 174793
KEITH PHILLIPS, Chief Deputy City Attorney
California State Bar No. 190664
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone:  (619) 533-5800
    Facsimile:   (619) 533-5856

Attorneys for Defendants
CITY OF SAN DIEGO, JONATHAN FERRARO,
PATRICK RICHARDS, EMILEE EMAMJOMEH,
JAMES EALSON, AND SCOTT WAHL

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHU DING, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF SAN DIEGO, JONATHAN FERRARO, an individual, PATRICK RICHARDS, an individual, EMILEE EMAMJOMEH, an individual, JAMES EALSON, an individual, SCOTT WAHL, an individual, and DOES 1-25,<br><br>        Defendants. | Case No.  25-cv-01683-AJB-JLB<br><br>**INDIVIDUALLY NAMED DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Date:        November 20, 2025<br>Time:       2:00 p.m.<br>Judge:     Hon. Anthony J. Battaglia<br>Court Room: 4A<br>Trial:      Not Set |

# TABLE OF CONTENTS

**Page (s)**

I. INTRODUCTION ............................................................................................................1

II. STATEMENT OF FACTS .............................................................................................3

III. AUTHORITY AND ARGUMENT ...............................................................................8

    A. Legal Standards .......................................................................................................8

    B. Sgt. Ferraro and Officer Richards used reasonable force requiring dismissal of the first cause of action for excessive force and the seventh cause of action for assault and battery under California state law .............................................................................10

    C. Reasonable suspicion and probable cause supported Ding's detention and arrest by Sgt. Ferraro and Officer Richards, and arrest by Officer Emamjomeh thereby requiring the dismissal of the second and third causes of action for wrongful detention and false arrest, and the eighth cause of action for false imprisonment under California state law ...........12

    D. The fourth cause of action for failure to supervise and discipline should be dismissed because Sgt. Ealson and Chief Wahl were not personally involved in the alleged violations, and the Complaint does not provide sufficient evidence to support that Sgt. Ealson or Chief Wahl's conduct caused the alleged unconstitutional conduct. ...............14

    E. The negligence claim fails as a matter of law; the indisputable evidence contained in the videos unquestionably demonstrates that the officers acted with ordinary care by following the standards required of police officers, having probable cause, and that Ding did not have a serious medical condition requiring immediate medical care ...................16

    F. Bane Act .................................................................................................................17

    G. The eleventh cause of action for intentional inflict of emotion distress is formulaic and the defendants did not act unreasonably..................................................................19

    H. Sgt. Ferraro, Officer Richards and Officer Emamjomeh are entitled to qualified immunity because the undisputable facts demonstrate that, even if reasonable suspicion and probable cause were missing or the force used was greater than reasonable, the law was not clearly established ..............................................................................................................20

IV. CONCLUSION .............................................................................................................21

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Ann M. v. Pacific Plaza Shopping Center*
  6 Cal. 4th 666 (1993) ..................................................................................... 17

5

*Asgari v. City of Los Angeles,*
  15 Cal. 4th 744 (1997) ................................................................................... 13

6

7

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................... 9, 20

8

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,*
  459 U.S. 519 (1983) ......................................................................................... 9

9

10

*Barber v. Chan*
  151 Cal. App. 4th 1456 (2007) ..................................................................... 17

11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................... 8, 20

12

13

*Bryan v. McPherson,*
  630 F.3d 805 (9th Cir. 2010) ......................................................................... 10

14

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.,*
  497 F.3d 972 (9th Cir. 2007) ........................................................................... 9

15

16

*Collins v. City and County of San Francisco,*
  50 Cal. App. 3d 671 (1975) ..................................................................... 13, 18

17

*Corales v. Bennett*
  567 F.3d 554 (9th Cir. 2009) ......................................................................... 16

18

19

*Cornell v. City & Cty. Of San Francisco,*
  17 Cal. App. 5th 766 (2017) ......................................................................... 18

20

*District of Columbia v. Wesby,*
  583 U.S. 48 (2018) ......................................................................................... 13

21

22

*Drummond v. City of Anaheim,*
  343 F.3d 1052 (9th Cir.2003) ....................................................................... 10

23

*Edson v. City of Anaheim,*
  63 Cal. App. 4th 1269 (1998) ....................................................................... 11

24

25

*Est. of Serna v. Cty. of San Diego,*
  No. 20CV2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) ..................... 18

26

*Felarca v. Birgeneau*
  891 F.3d 809 (9th Cir. 2018) ......................................................................... 15

27

*Graham v. Connor,*
  490 U.S. 386 (1989) ....................................................................................... 10

28

*Grant v. City of Long Beach,*
  315 F.3d 1081 (9th Cir. 2002) ................................................................. 13

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ............................................................................... 20

*Hughes v. Rodriguez,*
  31 F.4th 1211(9th Cir. 2022) ............................................................... 9, 19

*Hunter v. Bryant,*
  502 U.S. 224 (1991) ............................................................................... 21

*King v. State of California,*
  242 Cal. App. 4th 265 (2015) ................................................................. 17

*Knappenberger v. City of Phoenix,*
  566 F.3d 936 (9th Cir. 2009) ................................................................... 9

*Lacey v. Maricopa County,*
  693 F.3d 896 (9th Cir. 2012) ................................................................. 13

*Ladd v. County of San Mateo*
  12 Cal. 4th 913 (1996) ........................................................................... 16

*Lolli v. County of Orange*
  351 F.3d 410 (9th Cir. 2003) ................................................................. 14

*McGarry v. Sax*
  158 Cal. App. 4th 983 (2008) ................................................................. 16

*Miller v. Clark County,*
  340 F.3d 959 (9th Cir. 2003) ................................................................. 10

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ............................................................................... 20

*Moss v. U.S. Secret Serv.,*
  572 F.3d 962 (9th Cir. 2009) ................................................................... 9

*Navarro v. Block,*
  250 F.3d 729 (9th Cir. 2001) ................................................................... 8

*Pierce v. County of Marin,*
  291 F. Supp. 3d 982 (N.D. Cal. 2018) ................................................... 18

*Potter v. Firestone Tine & Rubber Co.,*
  6 Cal. 4th 965 (1993) ............................................................................. 20

*Reid v. Google*
  50 Cal. 4th 512 (2010) ........................................................................... 17

*Robertson v. Dean Witter Reynolds, Inc.,*
  749 F.2d 530 (9th Cir. 1984) ................................................................... 8

*Rosenbaum v. Washoe Cty.,*
  663 F.3d 1071 ................................................................................... 18, 21

*Rowland v. Christian*
  69 Cal. 2d 108 (1968) .......................................................................................... 17

*Salazar v. Upland Police Dep't*
  116 Cal. App. 4th 934 (2004) ............................................................................... 17

*Sanders v. City of Fresno,*
  No. CIV. F-05-0469 AWISMS, 2005 WL 2435893, at *5 (E.D. Cal. Sept. 30, 2005 ............. 13

*Sandoval v. Cnty. Of San Diego,*
  985 F.3d 657 (9th Cir. 2021) ............................................................................... 18

*Schinkel v. Sullivan*
  2016 WL 8731391 (E.D. Cal. Dec. 30, 2016) ........................................................ 17

*Scott v. Harris,*
  550 U.S. 372 (2007) ................................................................................... 1, 2, 9

*Shafer v. Cty. of Santa Barbara,*
  868 F.3d 1110 (9th Cir. 2017) ............................................................................. 21

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.,*
  88 F.3d 780 (9th Cir. 1996) ................................................................................... 8

*Taylor v. List*
  880 F.2d 1040 (9th Cir. 1989) ............................................................................. 14

*Terry v. Ohio,*
  392 U.S. 1 (1968) ................................................................................................ 12

*United States v. Bautista,*
  684 F.2d 1286 (9th Cir. 1982) ............................................................................. 12

*United States v. Del Vizo,*
  918 F.2d 821 (9th Cir. 1990) ............................................................................... 13

*Yousefian v. City of Glendale,*
  779 F.3d 1010 (9th Cir. 2015) ............................................................................. 13

**Statutes**

42 United States Code
  section 1983 ................................................................................................ 2, 13

California Government Code
  section 815.2 ...................................................................................................... 13

California Penal Code
  section 243(b) ................................................................................... 6, 7, 12, 14

California Penal Code
  section 69 ............................................................................................................ 14

California Penal Code
  section 835a ........................................................................................................ 11

v

This matter arises from a dispute in a Costco parking lot caused by Plaintiff Chu Ding's impatience, irritability, and lack of impulse control. Instead of accepting responsibility for causing the fracas, Ding is suing 1) the officer he attacked (Sgt. Jonathan Ferraro); 2) an officer who responded to the scene, handcuffed an agitated Ding when he chose not to allow a pat down, and ultimately arrested Ding (Officer Patrick Richards); 3) a detective who observed Ding's interview and prepared a follow-up report (Officer Emilee Emamjomeh); 4) a sergeant that reviewed the arrest report for grammar and elements of the charge (Sgt. James Ealson); 5) the Chief of Police (Scott Wahl); and 6) the City of San Diego for an alleged "pattern of the code of silence" or an inadequate policy of supervising and disciplining officers using unreasonable force.

Sgt. Ferraro did not use more force than was needed to defend himself and stop Ding from continuing to attack him. Officers Richards' and Emamjomeh's arrest and investigation are supported by probable cause and the security video from Costco. Sgt. Ferraro, Officer Richards and Officer Emamjomeh are also entitled to qualified immunity on the federal claims.

The California state law claims are also implausible based on the security video attached to Defendants' Request for Judicial Notice. Accordingly, Sgt. Ferraro requests that this Court dismiss this lawsuit with prejudice and enter judgment in his favor.

## I.  INTRODUCTION

On July 2, 2024, Plaintiff Ding Chu, fueled by his impatience and presumption that Jonathan Ferraro was purposefully blocking his exit from a parking spot, charged at and attacked Sgt. Ferraro. (ECF No. 1 – Complaint, pg. 2, ln. 4-7; Costco Security Video attached as Exhibit 1 to accompanying Request for Judicial Notice (RJN). Sgt. Ferraro stated that he was a police officer, defended himself, the citizens in the vicinity, and his family. (See Ex. 1 to RJN).

Citizens heard Sgt. Ferraro state that he was a police officer and called 911. Sgt. Ferraro's wife also called 911. Several officers arrived as did medics. Ding was very agitated and would not cooperate with a pat-down. (See Ex. 2 to RJN – Officer Richards' BWC footage). As a result, Officer Richards put him in handcuffs. Medics evaluated Ding on-scene and offered to take him to the hospital. Ding declined, indicating he would go with his wife. (*Id.*). Multiple witnesses heard Sgt. Ferraro state that he was a police officer. Officer Richards charged Ding with a violation of Penal Code 69, which prohibits a person from using force to resist an officer. (Doc. No. 1, pg. 2, ln. 23-27).

Ding filed suit on July 1, 2025. He named the lawsuit against Officers Jonathan Ferraro, Patrick Richards, Emilee Emamjomeh, and James Ealson (collectively Defendant Officers), Police Chief Scott Wahl, and the City of San Diego. All individuals, including Chief Wahl are named in their personal capacity. The lawsuit alleges eleven causes of action, which are: 1) Wrongful Detention under 42 U.S.C. § 1983 against Sgt. Ferraro and Officer Richards; 2) Excessive Force under 42 U.S.C. § 1983 against Officers Ferraro, Richards and Does 1-5; 3) False Arrest under 42 U.S.C. § 1983 against Officers Ferraro, Richards, Emamjomeh, and Doe 6; 4) Failure to Supervise and Discipline under 42 U.S.C. § 1983 against Defendants Wahl, Ealson and "Supervisory Does 7-12"; 5) Monell under 42 U.S.C. § 1983 against the City of San Diego; and, under California state law: 6) Negligence against All Defendants; 7) Assault and Battery against Officers Ferraro and Richards; 8) False Imprisonment against Officers Ferraro, Richards, Emamjomeh, and Doe 6; 9) Violation of Civil Code § 52.1 (aka, Bane Act) against All Defendants; 10) Violation of Civil Code § 51.7 (aka, Ralph Act) against Sgt. Ferraro; and 11) Intentional Infliction of Emotional Distress against Officers Ferraro, Richards, Emamjomeh, Doe 6, and the County of San Diego. (Doc. No. 1).

The footage of the incident was caught on a security camera and clearly shows that Ding lost his patience, was the aggressor, and Sgt. Ferraro used defending force

to stop Ding's attack[1]. Additionally, Officer Richards' BWC footage shows Ding's agitation and refusal to submit to a pat down, that Ding refused transport to a hospital from medics, and that Officer Richard loosened his handcuffs twice. Officer Emamjomeh's BWC shows Ding's interview by her and another detective; there was no coercion, he was read his rights, and Ding admitted to being the aggressor.

For these reasons, Sgt. Ferraro, Officer Richards, and Officer Emamjomeh, ask the Court to dismiss the first cause of action for excessive force, second and third causes of action for wrongful detention and false arrest, and under California law, the sixth cause of action for negligence, the seventh cause of action for assault and battery, the eighth cause of action for false imprisonment, the ninth cause of action for a violation of the Bane Act, and the eleventh cause of action for intentional infliction of emotional distress without leave to amend.

Sgt. Ealson and Chief Wahl ask the Court to dismiss the fourth cause of action for failure to supervise and discipline because the Complaint neither alleges they were not personally involved in the alleged wrongful conduct, nor does it allege any acts by them providing a non-conclusory causal connection to the wrongful conduct.

## II. STATEMENT OF FACTS

On July 2, 2024, off-duty San Diego police officer Jonathan Ferraro found himself in a tense encounter in a Costco parking lot. While waiting with his family in their pick-up truck for a parking spot located ahead and to the left, Ferraro's vehicle came to a halt in front of three other cars, one of which belonged to the Plaintiff Chu Ding. (ECF Doc No. 1, pg. 2, ln 4-7; Costco Security Footage at Timestamp (TS) 3:00:10-3:00:16[2], which is attached as Exhibit 1 to Defendants' Request for Judicial Notice).

---

[1] Accompanying this motion a request for judicial notice or incorporation by reference of the security video, the body worn camera (BWC) footage from Officer Richards' and Officer Emamjomeh's cameras.

[2] The timestamps for Exhibit A refer to the time and date on the Costco video rather than whatever media player is used to view the video.

Ding finished loading his vehicle and, without hesitation, walked towards Ferraro's truck. (Ex. A at TS 3:00:19-3:00:28). In an unsettling chain of events, Ding aggressively reached towards the officer's truck just as Ferraro started moving forward to claim a parking spot that a white car in the parking lane to his left was about to vacate. (*Id.* at 3:00:18-3:00:33.184).

Ferraro backed up to his original position because the white car was not, after all, pulling out. (*Id.* at 3:00:35.121-3:00:44.496). Meanwhile, Ding, displaying increasing agitation, moved his car forward multiple times, only to get out once more and banged on the rear passenger side of Ferraro's truck. (*Id.* at 3:00:38.309-3:01:14.200).

Reacting to the alarming behavior, Ferraro exited his truck to determine the cause and identity of the individual behind the aggression. (*Id.* at 3:01:16). At this moment, Ding slammed his car door and charged directly at Ferraro, ignoring any attempt at dialogue. (*Id.* at 3:01:20.121-3:01:22.684).

Suddenly, Ding put his hands on Sgt. Ferraro. Reacting swiftly, Sgt. Ferraro forced Ding away, an action completed by (*Id.* at 3:01:23.574). The situation rapidly escalated as Ding charged back at Officer and reached towards Sgt. Ferraro's waistband. Ding next tried to throw a punch at the officer. (*Id.* at _____)

Sgt. Ferraro sought to subdue Ding by attempting to pin him against the back of the truck at (*Id.* at 3:01:36.403). Ding managed to break free, moving out of the security video frame. (*Id.* at 3:01:36.403-3:01:40.309). The intensity of the altercation reached its peak moments later, as Sgt. Ferraro held onto Ding and brought him to the ground, with Sgt. Ferraro also falling to the ground. (*Id.* at 3:01:41.871). Less than a minute had transpired from when Ding charged towards Sgt. Ferraro and the end of the incident.

Officer Patrick Richards was the first responding San Diego police officer to arrive on the scene. (Officer Richards' BWC footage at 15:08:30, attached as Exhibit B to RJN). He walked to the location of Ding and Sgt. Ferraro, coming across Sgt.

4

Ferraro first). (Ex. B at TS 15:08:46-15:09:45). Sgt. Ferraro explained he was in his truck with his family when he heard honking, saw Ding come out of his car, approach Sgt. Ferraro's truck and bang on it. (*Id.* at TS 1508:46-15:08:59). Sgt. Ferraro also stated that he got out of his truck saying, "why are you hitting my truck?" when Ding charged him. (*Id.* at TS 15:08:59-15:09:04). Sgt. Ferraro told Officer Richards that he then told Ding "I'm a cop". Ding responded by repeatedly demanding to see Sgt. Ferraro's badge and Sgt. Ferraro went to detain him by trying to pin Ding against the pick-up truck. (*Id* at TS 15:09:08-15:09:30). Ding got away and they moved towards the rocks and Sgt. Ferraro tried to grab Ding's arms and put them behind his back but was unable to do so. (*Id.* at TS 15:09:30-15:09:33). Ding was now up on the curb and Sgt. Ferraro grabbed him and slammed him down. (*Id.* at TS 15:09:33-15:09:37). Sgt. Ferraro told Officer Richards that he took these actions to detain him and put him under citizen's arrest for coming at him when he got out of the truck. (*Id.* at TS 15:09:37-15:09:45).

Officer Richards next tried to speak with Ding who was sitting on the red curb next to the median; Ding denied having any weapons and refused to allow Officer Richards to pat him down. (15:09:56-15:10:03). Ding became agitated and stated, "I'm a law enforcement officer" arguing that Officer Richards did not have reasonable suspicion to pat him down. When Officer Richards tried to pay him down, Ding continued arguing and physically tried to avoid being handcuffed. (*Id.* at 15:10:03-15:10:46). Ding then refused to show his identification. (*Id.* at 15:10:46-

Ding told Officer Richards he was injured. (*Id.* at 15:11:12-15:11:13). Officer Richards immediately asked where he was injured, and Ding said his shoulder and head. (*Id.* at 15:11:13-15:11:16). Ding angrily asked why he was being handcuffed and Officer Richards told him that he was being detained for a 242[3]. Ding argued, "no I am not; I'm a law enforcement officer . . . I'm with ICE . . . so why are you

---

[3] 242 is shorthand for California Penal Code section 242, also known as battery.

patting me down?" Officer Richards responded, "For weapons. I don't know who you are." (*Id.* at 15:11:16-15:11:29; 15:11:33-15:11:40). When Officer Richards asked Ding what happened, Ding indicated that Sgt. Ferraro was blocking him; Ding told him to move, and Ferraro got out of the truck and tried to push Ding away. (*Id.* at 15:12:17-15:12:32). Ding stated, "that guy is so aggressive, he came down and scold [sic] me and pushed me away." (*Id.* at TS 15:12:34-15:12:49). Medics arrived at 15:15:04. Officer Richards ran Sgt. Ferraro's license plates (*Id.* at 15:15:25-15:15:38). Ding did not have license plates on the front or back of his car[4]; Officer Richards ran his VIN instead. (*Id.* at 15:15:46-15:16:27). By this time, medics were talking with Ding and then took him to their unit to evaluate him. (*Id.* at 15:16:27-15:18:36; 15:20:24-15:20:39; 15:22:58-15:23:48). Ding did not want to go to the hospital by ambulance. (*Id.* at 15:23:42-15:23:50)

Meanwhile, Sgt. Ferraro described to other officers what had occurred. He and told them that he didn't know that Ding wanted to get out of the parking spot. As he and the other officers were walking towards the back of the truck and the front of Ding's Fiat, Sgt. Ferraro indicated he did not even know that Ding started moving forward before he banged on his truck. (*Id.* at 15:19:40-15:20:21). Officer Richards spoke with several other officers who had spoken with witnesses and Sgt. Ferraro. The other officers told him that Sgt. Ferraro said Ding charged him and witnesses indicated Ding aggressively walked towards Sgt. Ferraro with his arms extended, and that Ding knew Sgt. Ferraro was an officer and pushed him anyway. One officer suggested an appropriate charge may be a violation of Penal Code section 243(b)[5]. (15:21:07-15:22:14).

Officer Richards checked with another officer for guidance as to the charge and whether he should be arrested or cited. The other officer confirmed the charge of

---

[4] California Vehicle Code section 5200 requires vehicles to have at least one visible license plates.

[5] Battery on peace officer.

Penal Code 243(b) and that it should be a citation. (*Id.* at 15:24:48-15:24:56; 15:25:11-15:25:20).

At 3:52 p.m., the medics released Ding and Officer Richards placed him in a patrol vehicle. In response to Ding's complaint about the handcuffs being too tight, Officer Richards promptly loosened and re-locked them. Despite Ding's continued complaints, Officer Richards demonstrated that the handcuffs were appropriately adjusted by ensuring he could fit his full finger between the cuffs and Ding's wrists (Id. at 15:52:45-15:53:10). At 4:27 p.m., Officer Ferraro loosened the handcuffs a second time, after which Ding confirmed, "it's good right now." (*Id.* at 16:27:58-16:28:54).

Officer Emmajomeh and another officer interviewed Ding at the substation. Before beginning the interview, Officer Emamjomeh administered his *Miranda* rights, which he acknowledged and waived (Ex. E to RJN – BWC of Officer Emamjomeh, at 17:46:27-17:47:07). Ding provided a detailed narrative of the altercation, claiming he was forcefully thrown to the ground, resulting in significant pain in his shoulder, knee, and back (*Id.* at 17:47:07-17:49:02). He reported remaining on the floor for approximately thirty minutes before receiving assistance from medics (*Id.* at 17:51:12-17:51:18).

Ding's initial description included assertions of hostility from Sgt. Ferraro, questioning, "Why are you hitting my vehicle?" and asserting his law enforcement status. Ding asked to see Sgt. Ferraro's badge and credentials, but according to Ding, the situation escalated, allegedly resulting in Sgt. Ferraro bringing Ding to the ground (*Id.* at 17:49:02-17:50:29). Ding further claimed that Sgt. Ferraro never instructed him to stop (*Id.* at 17:50:29-17:50:36).

Ding indicated that an officer handcuffed him despite his assertions of being a law enforcement officer with ICE and providing a federal building access pass as identification (*Id.* at 17:51:18-17:53:32). At this point, a male officer took over the

1  interview, and Ding explained his role with ICE as a Deportation Officer, noting that

2  his credentials were stored in a safe (*Id.* at 17:54:51-17:55:12).

3  The officer then reviewed video footage with Ding, who agreed that it depicted

4  him approaching Sgt. Ferraro, getting in his face, and pushing Sgt. Ferraro (*Id.* at

5  18:01:03-18:16:49). During the footage review, Ding expressed remorse for his

6  aggressive behavior, admitting that his response was inappropriate (*Id.* at 18:16:53-

7  18:17:17). He conceded that he should have been more patient and maintained a

8  proper distance (*Id.* at 18:18:10-18:19:50).

9  Ding described how he grabbed Ferraro's arm, leading to *Id.* at Ferraro dodging

10  a punch (*Id.* at 18:20:27-18:20:35). Ding did not indicate that he ever believed Sgt.

11  Ferraro was a police officer (*Id.* at 18:21:01-18:21:12). The male officer inquired if

12  Ding felt remorseful about the incident. Ding agreed, expressing a willingness to

13  apologize and proceeded to write an apology note to Sgt. Ferraro (*Id.* at 18:23:28-

14  18:24:16).

15  Throughout the interview, Ding repeatedly stated that his behavior was out of

16  character, attributing it to a strong desire to return home quickly. He acknowledged

17  his mistakes and needed to be more patient (*Id.* at 18:42:09-18:42:59).

18  ### III.    AUTHORITY AND ARGUMENT

19  ### A.    Legal Standards

20  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

21  legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732

22  (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for '(1) lack

23  of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim.'"

24  *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir.

25  1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.

26  1984)). However, a complaint will survive a motion to dismiss only if it contains

27  "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

28  *Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews

the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

Specifically, where an audio or video recording blatantly contradicts the plaintiff's version of events, the Court should not adopt the plaintiff's account. *Hughes v. Rodriguez,* 31 F.4th 1211, 1218 (9th Cir. 2022) citing *Scott v. Harris*, 550 U.S. 372, 381-82 (2007). Although the Ninth Circuit has generally chosen not to consider unless it is specifically referred to in the complaint, even when it blatantly contradicts the facts contained in a complaint, , other circuits have done so as shown in the accompanying Request for Judicial Notice.

A court should not grant leave to amend unless the plaintiff could possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009). This is such a case as the security video, and the videos from the body worn cameras of Officers Richards and Emamjomeh clearly demonstrate that Ding was the aggressor, Sgt. Ferraro used reasonable force under the circumstances, and there was reasonable suspicion to detain and then probable cause to arrest Ding. / / /

**B.    Sgt. Ferraro and Officer Richards used reasonable force requiring dismissal of the first cause of action for excessive force and the seventh cause of action for assault and battery under California state law.**

A Fourth Amendment analysis of excessive, non-deadly force requires a court to balance the "nature and quality of the intrusion" on a person's liberty with the "countervailing governmental interests at stake" to determine whether the use of force was objectively reasonable under the circumstances. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir.2003), *citing Graham v. Connor*, 490 U.S. 386, 396 (1989). The objective-reasonableness inquiry under *Graham* is a three—step analysis. *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003); *see also Bryan v. McPherson*, 630 F.3d 805, 823-32 (9th Cir. 2010). First, the court must evaluate the type and amount of force used. Next, it must assess the importance of the governmental interests at stake by considering the factors set out in *Graham*—the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest. Finally, the court must balance the "gravity of the intrusion on the individual against the government's need for the intrusion ...." *Miller*, 340 F.3d at 964. The need for force is at the heart of *Graham*. *Drummond*, 343 F.3d at 1057 (citation omitted).

In California, the elements of a claim of battery by law enforcement officer are 1) the defendant intentionally touched the plaintiff; 2) the defendant used unreasonable force on the plaintiff; 3) that the plaintiff did not consent to the use of that force; 4) that the plaintiff was harmed; and 5) the defendant's use of unreasonable force was a substantial factor in causing the plaintiff's harm. Judicial Council of California Civil Jury Instructions (CACI) Instruction No. 1305A. An officer may use reasonable force to arrest or detain a subject when the officer has reasonable cause to believe that person has committed a crime. *Edson v. City of Anaheim,* 63 Cal. App.

10

4th 1269, 1272 (1998); *see also* Cal. Penal Code § 835a (providing authority to use objectively reasonable force to arrest).

Here, the uses of force by Sgt. Ferraro and Officer Richards were reasonable under the circumstances facing them. Sgt. Ferraro responded with a measured response to an irate man charging him and trying to strike him over a parking lot dispute. As the security video from Costco demonstrates, Sgt. Ferraro had already stopped moving when Ding charged him and got inches from his face. Sgt. Ferraro pushed Ding back and back pedaled to put space between them. Additionally, according to Ding's statements during his interview, Sgt. Ferraro immediately identified himself as a police officer. Sgt. Ferraro did not attempt to punch Ding. Instead, Sgt. Ferraro tried to pin Ding to the back of the truck to detain him. When Ding got away, Sgt. Ferraro took Ding to the ground for the safety of Sgt. Ferraro and the uninvolved people in the parking lot.

The Complaint alleges Officer Richards immediately handcuffed Ding without asking him a single question, left Ding in his patrol vehicle in handcuffs despite knowing Ding reported shoulder pain, and that the handcuffs were cutting off Ding's circulation (ECF No. 1, ¶¶ 207-208). It also alleges that Officer Richards placed Ding in tight handcuffs and refused to loosen them for hours. (*Id.* 286). Officer Richards' BWC footage indisputably demonstrates otherwise.

Given the context of an arrest for battering a police officer, Officer Richards' actions were both measured and reasonable. He responded to Ding's complaints, made necessary adjustments, and ensured the handcuffs were not excessively tight while maintaining the required level of restraint. Sgt. Ferraro explained to Officer Richards what had occurred. Richards then spoke with Ding, who refused to permit a pat down for weapons despite having been in a physical altercation. When Officer Richards tried to pat him down anyway, Ding physically tried to avoid being handcuffed. Directly belying the Complaints allegations, Officer Richards loosened the handcuffs twice and demonstrated that Richards could place the girth of his finger

11

between the handcuffs and Ding's wrist. Further, Ding never reported that the handcuffs made his shoulder hurt more. Presumably, as an ICE agent, Ding knew law enforcement protocol, yet he did not request double cuffs or to have his hands in front of his body.

Police conducting on-the-scene investigations involving potentially dangerous suspects may take precautionary measures when they are reasonably necessary. The purpose of the Terry frisk is "to allow the officer to pursue his investigation without fear of violence." *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) (citation omitted). As the Supreme Court indicated:

> Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded.

*Terry v. Ohio,* 392 U.S. at 23.

Accordingly, Defendants respectfully request that the Court dismiss the first cause of action for excessive force and seventh cause of action for assault and battery under California state law without leave to amend.

**C.    Reasonable suspicion and probable cause supported Ding's detention and arrest by Sgt. Ferraro and Officer Richards, and arrest by Officer Emamjomeh thereby requiring the dismissal of the second and third causes of action for wrongful detention and false arrest, and the eighth cause of action for false imprisonment under California state law.**

Similarly, Sgt. Ferraro and Officer Richards had both reasonable suspicion to detain Ding and to arrest him for assault and battery of a peace officer under Penal Code section 243(b). Officer Emamjomeh also had probable cause to arrest Ding. Neither a detention supported by reasonable suspicion nor an arrest supported by probable cause violates a person's rights. The standard for detaining a person is whether there is reasonable suspicion based on specific, articulable facts which, taken together with rational inferences from those facts, justify the intrusion. This standard is less than probable cause. *Terry v. Ohio,* 392 U.S. 1 (1968).

12

A claim for false arrest under 42 U.S.C. § 1983 is only cognizable when the arrest was without probable cause. *Lacey v. Maricopa County,* 693 F.3d 896, 918 (9th Cir. 2012). A plaintiff has the burden of alleging and proving the absence of probable cause. *See Yousefian v. City of Glendale,* 779 F.3d 1010, 1014 (9th Cir. 2015).

"[P]robable cause exists when … circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the Plaintiff] had committed a crime." *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar." *District of Columbia v. Wesby,* 583 U.S. 48, 57 (2018) (quotations and citation omitted). Further, "[w]hen there has been communications among [officers], probable cause can rest upon the investigating [officers'] 'collective knowledge.'". *United States v. Del Vizo,* 918 F.2d 821, 826 (9th Cir. 1990).

In California, false imprisonment and false arrest are not separate torts. *Asgari v. City of Los Angeles,* 15 Cal. 4th 744, 752 (1997). The elements of the cause of action are that officers arrested the plaintiff without probable cause. Judicial Council of California Civil Jury Instructions (July 2024 update) (CACI), Instruction No. 1401. A municipality is not liable if the police officer is not liable. *Collins v. City and County of San Francisco,* 50 Cal. App. 3d 671, 673-74 (1975); Cal. Gov't Code § 815.2. Probable cause to arrest is an affirmative defense to this claim. *Sanders v. City of Fresno,* No. CIV. F-05-0469 AWISMS, 2005 WL 2435893, at *5 (E.D. Cal. Sept. 30, 2005) citing CACI Nos. 1401 and 1402.

Here, there is no question, based on Sgt. Ferraro's observations and participation in the incident, the Costco security video, and his report to Officer Richards as to what occurred that there was reasonable suspicion to detain.

- Ding hit Sgt. Ferraro's truck hard enough for Sgt. Ferraro to hear it in the cab of his truck.

- Ding charged at Sgt. Ferraro and got within inches from his face when Sgt. Ferraro asked him why he was hitting his truck

- Sgt. Ferraro announced that he was a police officer and Ding continued the attack

- Ding aggressively continued to attack Sgt. Ferraro even after Sgt. Ferraro tried to pin Ding to the truck.

- Ding admitted Sgt. Ferraro announced that he was a police officer and that Ding was the aggressor.

These facts add up to probable cause for a violation of California Penal Code section 243(b) and Penal Code section 69. Accordingly, the Court should dismiss the second and third causes of action for wrongful detention and false arrest and the eighth cause of action for false imprisonment under California state law without leave to amend.

**D. The fourth cause of action for failure to supervise and discipline should be dismissed because Sgt. Ealson and Chief Wahl were not personally involved in the alleged violations, and the Complaint does not provide sufficient evidence to support that Sgt. Ealson or Chief Wahl's conduct caused the alleged unconstitutional conduct.**

A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in, directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003); and *Hansen*, 885 F.2d at 646 (finding that the police chief was not personally involved in the alleged incident). As such, a supervisor can only be held liable in his or her individual capacity under § 1983 if (1) he or she personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen*, 885 F.2d 642 at 646.

14

For liability to attach, supervisors must have actual supervisory authority over the government actor who committed the alleged violations. *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018). The threshold inquiry for a claim of supervisory liability is, of course, a violation of Ding's constitutional rights. As demonstrated above, Ding's rights were not violated. Further, Ding cannot meet his burden of proving a failure to supervise or discipline.

Here, the Complaint neither alleges they were not personally involved in the alleged wrongful conduct, nor does it allege any acts by them providing a non-conclusory causal connection to the wrongful conduct. The Complaint does not allege the either Sgt. Ealson or Chief Wahl were personally at the scene or participated in the alleged wrongful conduct. Instead, the Complaint provides only conclusory allegations that Sgt. Ealson "knew his arrest was baseless and without probable cause . . . [and] took no action to prevent the case from being presented to the Office of the District Attorney." (ECF No. 1, ¶ 245). The Complaint does not state what "evidence" Sgt. Ealson is accused of reviewing – did he review the arrest report, security video, or BWC videos?

Additionally, Plaintiff did not provide any non-conclusory evidence that Sgt. Ealson "knew or should have known of the dangerous and racist propensities of defendant Ferraro", knew subordinates were routinely covering up misconduct and engaging in retaliatory actions, aware of a code of silence, a pattern of charging innocent people to cover up misconduct, and did nothing to correct or discipline them. (*Id.* at ¶¶ 246-250). The Complaint does not provide one single example of Sgt. Ealson's knowledge of the above. As such, Ding failed to adequately plead the deliberate indifference element of supervisory liability against Sgt. Ealson.

Similarly, the Complaint does not allege that Chief Wahl was personally present or involved in the decision to detain, arrest, or use force to detain and arrest Ding. Instead, the Complaint alleges Chief Wahl has been an officer with the San Diego police department for years, including being in the chain of command but

although he knew or should have known that the City's policy of "supervision and discipline of officers . . . was so inadequate that it was obvious that a failure to correct it would result in further incidents . . . by their officers." (*Id.* at 257).

The Complaint conflagrates a *Monell* claim with a supervisory claim made against Chief Wahl in his individual capacity. Nothing in the Complaint demonstrates that Chief Wahl knew Sgt. Ferraro or Officers Richards and Emamjomeh had these propensities or an example of one of them acting in one of the alleged improper manners on previous occasions. In fact, in this specific case, there were no violations.

Accordingly, Sgt. Ealson and Chief Wahl ask that the Court grant their motion to dismiss the fourth cause of action for failure to supervise and discipline.

**E.    The negligence claim fails as a matter of law; the indisputable evidence contained in the videos unquestionably demonstrates that the officers acted with ordinary care by following the standards required of police officers, having probable cause, and that Ding did not have a serious medical condition requiring immediate medical care.**

"The elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)). Stated more succinctly, to recover on a negligence theory, a plaintiff must prove duty, breach, causation, and damages. *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917 (1996) (citations omitted) (emphasis in original.) The absence of any one of these elements is fatal to a negligence claim.

Generally, California law requires people to use ordinary care to prevent others from being injured as a result of their conduct but "[t]he existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court

16

to decide. [Citation.]" *Barber v. Chang,* 151 Cal. App. 4th 1456, 1463 (2007). There are several factors to be considered in determining the existence and scope of a duty of care. *Ann M. v. Pacific Plaza Shopping Center,* 6 Cal. 4th 666, 673 (1993), *disapproved of on other grounds by Reid v. Google,* 50 Cal. 4th 512 (2010) and *disapproved of on other grounds by Schinkel v. Sullivan,* 1:16-CV-00818-AWI-JLT (PC), 2016 WL 8731391 (E.D. Cal. Dec. 30, 2016).

In *Ann M.,* the Court relied on the following factors listed by the Court in *Rowland v. Christian,* 69 Cal. 2d 108, 113 (1968):

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Ann M.,* 6 Cal. 4th at 675 n.5.

In the context of an arrest, when probable cause exists, there can be no claim for negligence based on that arrest. *Salazar v. Upland Police Dep't,* 116 Cal. App. 4th 934, 947 (2004). As demonstrated above, Sgt. Ferraro and Officers Richards and Emamjomeh had probable cause to arrest Ding.

### F.    Bane Act

The elements of a Bane Act violation are 1) by threats, intimidation or coercion, the defendant caused the plaintiff to reasonably believe that if they exercised a protected statutory or constitutional right, the defendant would commit violence against the plaintiff and that the defendant had the apparent ability to carry out the threats; 2) the defendant intended to deprive the plaintiff of the enjoyment of interests protected by that right; 3) that the plaintiff was harmed; and 4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. CACI No. 3066. *See also, King v. State of California,* 242 Cal. App. 4th 265, 294 (2015). The Bane Act additionally requires a plaintiff to show that the defendant had the

17

specific intent to violate a person's constitutional rights. *Reese v. County of Sacramento,* 888 F.3d at 1045.

To show specific intent, a plaintiff must satisfy two requirements. First, the right at issue must be "clearly delineated and plainly applicable under the circumstances of the case[.]" *Cornell v. City & Cty. Of San Francisco*, 17 Cal. App. 5th 766, 803 (2017). Second, the defendant must have "commit[ted] the act in question with the particular purpose of depriving" the victim of his enjoyment of the interests protected by that right. *Id.* The specific intent requirement can be "satisfied where the defendant ... acted with '[r]eckless disregard of the right at issue.' " *Est. of Serna v. Cty. of San Diego*, No. 20CV2096-LAB-MSB, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (alteration in original).

To prove reckless disregard, "the plaintiff must show that the defendant's actions were objectively unreasonable, which requires a showing of more than negligence but less than subject intent – something akin to reckless disregard" (internal quotations and citation omitted). *Sandoval v. Cnty. Of San Diego,* 985 F.3d 657, 669 (9th Cir. 2021) (internal quotations omitted).

The first question is resolved if it is legally clear, under the circumstances of the case, that the defendants violated a clearly delineated right. *Reese,* 888 F.3d at 1045. This inquiry is necessarily akin to the qualified immunity inquiry below and without clear delineation, there can be no Bane Act claim.

With respect to the second question, "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.*; *See also Pierce v. County of Marin,* 291 F. Supp. 3d 982, 997-98 (N.D. Cal. 2018) (finding that repeated mistaken arrest was sufficient to state a Bane Act claim for violation of the Fourth Amendment). Reckless disregard occurs when an officer entertains serious doubts as to the legality of arresting the subject. *See United States v. Collins,* 61 F.3d 1379, 1384 (9th Cir. 1995); *see also Rosenbaum v. Washoe*

*County,* 663 F.3d 1071, 1078 (9th Cir. 2011) (the controlling question is whether a reasonable officer could have believed probable cause existed).

The Complaint alleges violations of Ding's constitutional and civil rights while in custody. These claims include the right to be free from unreasonable treatment and deliberate indifference to his serious medical needs under the Fourth Amendment and Article I, §§ 7 and 13 of the California Constitution, the rights to life, liberty, property, safety, happiness, and privacy under Article I, § 1 of the California Constitution, the right to protection from bodily harm and personal insult, under California Civil Code § 43 and to be free from excessive force under the Fourth Amendment . (ECF No. 1, ¶¶ 307 and 308).

In a conclusory manner, Ding further alleges that the defendants acted with recklessness and a specific intent to deprive him of these rights. (*Id.* at ¶ 309). He also alleges that Sgt. Ferraro conspired to fabricate charges and to detain him without a legal basis. (*Id.* at ¶¶ 314 and 315).

As discussed above, there was reasonable suspicion and probable cause to detain and arrest Ding based on the Costco security video, and both Sgt. Ferraro and Officer Richards used reasonable force under the circumstances they faced. Accordingly, Defendants Ferraro, Richards and Emamjomeh respectfully request that the Court grant their motion to dismiss this cause of action without leave to amend.

### G. The eleventh cause of action for intentional inflict of emotion distress is formulaic and the defendants did not act unreasonably.

A cause of action for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct" *Hughes v. Pair,* 46 Cal. 4th 1035, 1050-51 (2009) (internal quotations and citations

19

omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Potter v. Firestone Tine & Rubber Co.,* 6 Cal. 4th 965, 1001 (1993). The defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id.* (internal quotations and citations omitted).

Ding's eleventh cause of action for intentional infliction of emotional distress uses the formulaic recitation of the elements prohibited by *Twombly* and *Iqbal*. Additionally, as shown above, Defendants Ferraro, Richards, and Emamjomeh acted reasonably.

**H.    Sgt. Ferraro, Officer Richards and Officer Emamjomeh are entitled to qualified immunity because the undisputable facts demonstrate that, even if reasonable suspicion and probable cause were missing or the force used was greater than reasonable, the law was not clearly established.**

The Supreme Court has made clear that qualified immunity is "an immunity from suit rather than a mere defense to liability" and therefore must be resolved "at the earliest possible stage in litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (qualified immunity is a "threshold question"). Qualified immunity is designed to protect officers not only from liability but also from "the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Unnecessary litigation of constitutional issues also wastes the parties' resources. Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell,* 472 U.S., at 526, 105 S.Ct. 2806 (emphasis deleted). Considering undisputed video evidence at the motion to dismiss stage would serve the purpose of qualified immunity, which is to avoid forcing "the parties to endure additional burdens of suit—such as the costs of litigating constitutional questions and delays attributable to resolving them—when the suit otherwise could be disposed of more readily." *Pearson* at 237 (internal citation omitted).

20

"Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). In other words, officers are immune under the doctrine unless "all reasonable officers would agree that there was no probable cause in this instance." *Rosenbaum v. Washoe Cty.,* 663 F.3d 1071, 1078 (2011).

> For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, ***in the defendant's place,*** that what he is doing violates federal law.

*Shafer v. Cty. of Santa Barbara,* 868 F.3d 1110, 1117 (9th Cir. 2017) (emphasis added).

Here, Defendants have been unable to locate any cases indicating an off duty officer, or any officer for that matter, must not use defending force, the force reasonably necessary to detain or arrest a subject, or to loosen, remove, or provide double handcuffs to an individual who does not indicate that their handcuffs are making an injury worse. There are also no cases sufficiently like the undisputed facts as shown in security or BWC videos. Further, there are no cases putting Sgt. Ferraro on notice that he could not defend himself or use reasonable force to take Ding to the ground. There are also no cases to put Officers Richards and Emamjomeh on notice that they could not rely on the security video when deciding whether to pursue charges against Ding. Lastly, case law does not put Sgt. Ealson or Chief Wahl on notice.

For these reasons Sgt. Ferraro and Officers Richards and Emamjomeh, Sgt. Ealson, and Chief Wahl respectfully request that the Court find they are entitled to qualified immunity if the Court should the Court find the causes of action for excessive force, wrongful detention and false arrest survive this motion to dismiss.

## IV.   CONCLUSION

For the reasons stated above, Sgt. Ferraro, Officer Richards, and Officer Emamjomeh respectfully request that the Court dismiss the first cause of action for

excessive force, second and third causes of action for wrongful detention and false arrest, and under California law, the sixth cause of action for negligence, the seventh cause of action for assault and battery, the eighth cause of action for false imprisonment, the ninth cause of action for a violation of the Bane Act, and the eleventh cause of action for intentional infliction of emotional distress without leave to amend. Sgt. Ealson and Chief Wahl ask the court to dismiss the fourth cause of action for failure to supervise and discipline. This would leave the Ralph Act claim (10th cause of action) and the *Monell* claim against the City (5th cause of action).

Dated:  September 3, 2025                    HEATHER FERBERT, City Attorney

By  */s/ Stacy J. Plotkin-Wolff*
Stacy J. Plotkin-Wolff
Senior Chief Deputy City Attorney

Attorneys for Defendants
CITY OF SAN DIEGO, JONATHAN
FERRARO, JAMES EALSON, AND
SCOTT WAHL