1  EUGENE G. IREDALE: SBN 75292
2  JULIA YOO: SBN 231163
   SARAH MUSUMECI: SBN 328306
3  IREDALE & YOO, APC
   105 West F Street, Fourth Floor
4  San Diego, CA 92101-6036
   TEL: (619) 233-1525
5
6
7  Attorneys for Plaintiff

8           UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10
11  CHU DING, an individual,              CASE NO. 25-cv-01683-AJB-JLB

12              Plaintiff,                **PLAINTIFF'S OPPOSITION TO
                                          JONATHAN FERRARO'S,
13  v.                                    PATRICK RICHARDS', EMILEE
                                          EMAMJOMEH'S, JAMES
14  CITY OF SAN DIEGO, JONATHAN           EALSON'S AND SCOTT WAHL'S
15  FERRARO, an individual, PATRICK       MOTION TO DISMISS**
    RICHARDS, an individual, EMILEE
16  EMAMJOMEH, an individual,             Date: November 20, 2025
    JAMES EALSON, an individual,          Time: 2:00 p.m.
17  SCOTT WAHL, an individual, and        Judge: Hon. Anthony J. Battaglia
    DOES 1-25,                            Court Room: 4A
18                                        Trial: None Set
19
20              Defendants.
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1

II. LEGAL STANDARD ................................................................................2

III. FACTUAL ALLEGATIONS OF THE COMPLAINT ..............................2

IV. ARGUMENT ............................................................................................6

   A. A DISMISSAL OF A COMPLAINT CANNOT BE BASED ON DEFENDANTS' OWN IMAGININGS OR SELF-SERVING NARRATIVE. .........................................................6

   B. THE USE OF CHERRY-PICKED VIDEO FOOTAGE IS UNSCRUPULOUS AND THE MOTION IS PREMATURE PURSUANT TO FRCP RULE 56(D)................................8

   C. DEFENDANTS USED EXCESSIVE FORCE..................................................10

      1. Ferraro .........................................................................................10

      2. Richards ........................................................................................13

   D. PLAINTIFF HAS SUFFICIENTLY ALLEGED THAT HE WAS WRONGFULLY DETAINED, FALSELY ARRESTED AND IMPRISONED UNDER SECOND, THIRD, AND EIGHTH CAUSES OF ACTION. ..................................................................14

   E. PLAINTIFF HAS STATED A CLAIM AGAINST DEFENDANTS WAHL AND EALSON FOR FAILURE TO SUPERVISE AND DISCIPLINE. ..........................................17

   F. PLAINTIFF HAS SUFFICIENTLY ALLEGED A NEGLIGENCE CAUSE OF ACTION..20

   G. PLAINTIFF HAS SUFFICIENTLY ALLEGED A BANE ACT VIOLATION.................20

   H. PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. ..............................................................21

V. CONCLUSION ..........................................................................................21

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................15

*Andrews v. City of Henderson*, 35 F.4th 710 (9th Cir. 2022) ...................................12

*Arias v. Amador*, 61 F. Supp. 3d 960 (E.D. Cal. 2014) ...........................................14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................2, 17

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007)................................12

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) ..........................20

*Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766 (2017) ...............20

*Dillman v. Tuolumne Cnty.*, No. 1:13-CV-00404 LJO, 2013 2013 WL 1907379
(E.D. Cal. May 7, 2013) .............................................................................................14

*Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989) .......................................................17

*Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125 (9th Cir. 2002) ......11

*Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) ................................15

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)...................8, 9

*LaLonde v. Cnty. of Riverside*, 204 F.3d 947(9th Cir. 2000) ..................................14

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991) ....................................17

*LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000) ............................................2, 16

*Mehta v. City of Sunnyvale*, 721 F. Supp. 3d 1041 (N.D. Cal. 2024).....................20

*Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003).................................................14

*Morley v. Smith*, 309 F. Appx. 103 (9th Cir. 2009)..................................................9

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).......................................................2

*People v. Rodriguez*, 207 Cal. App. 4th 1540 (App. 2 Dist. 2012) ........................16

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ...............................20

*Robinson v. City of San Diego*, 954 F. Supp. 2d 1010 (S.D. Cal. 2013)................16

*S.R. Nehad v. Browder*, 929 F.3d 1125 (9th Cir. 2019)..........................................20

*Saman v. Robbins*, 173 F.3d 1150 (9th Cir. 1999).................................................13

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

*Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) ..............................

*Schwarz v. United States*, 234 F.3d 428 (9th Cir. 2000) ...........................................2

*Starr v. Baca*, 652 F.3d 1202

*Terry v. Ohio*, 392 U.S. 1 (1968) .................................................................16

*United States v. Cortez*, 449 U.S. 411 (1981)..........................................16

*United States v. Lopez–Soto,* 205 F.3d 1101 (9th Cir. 2000) ....................................16

*United States v. Michael R.*, 90 F.3d 340 (9th Cir.1996) ...........................16

*Wall v. Cnty. of Orange,* 364 F.3d 1107 (9th Cir. 2004)..........................14

*White v. Pierce County*, 797 F.2d 812 (9th Cir. 1986) ...........................12

**Rules**

Fed. R. Civ. P. 8(a)(2)..............................................................................2

Fed. R. Civ. P. 12(b)(6)............................................................. 1, 2, 7, 9

Fed. R. Civ. P. 56(d) ................................................................................9

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

# I. INTRODUCTION

"You are entitled to your opinion. But you are not entitled to your own facts."
- Daniel Patrick Moynihan.

On July 2, 2024, after Jonathan Ferraro slammed Chu Ding headfirst onto the pavement after screaming "you Chinese piece of shit," knocking Mr. Ding unconscious and separating his shoulder, Ferraro's fellow officers from the San Diego Police Department showed up in droves. They spent hours concocting a story to cover up for Ferraro because as it turns out, the victim, Mr. Ding, was a federal peace officer.

Because the best defense is a good offense and they knew that the District Attorney would never prosecute Mr. Ding who was the victim, they took him to the police station and interrogated him for hours while denying him food and water, and urgent medical care. After the concussed Mr. Ding was coerced into signing an "apology" letter, defendant Richards begrudgingly took him to the hospital to be treated. After being told Mr. Ding had a separated shoulder and a fractured rib, Richards tried to handcuff Mr. Ding's hands to his back to take him to jail. Richards only stopped because the emergency room doctor wouldn't permit it.

By fabricating a story, leaving out eyewitness statements in the police report and withholding critical evidence, defendants charged Mr. Ding with a felony, a violation Penal Code § 69(a), causing him to spend the night in jail, and causing his employer to initiate an investigation by the OPR (Office of Professional Responsibility). The District Attorney rejected the charges but the damage to Mr. Ding was already done.

Continuing their campaign of misrepresentations and obfuscation, Defendants submit a motion to dismiss by rewriting the entirety of Plaintiff's complaint. They submit edited videos and transcripts in order to cherry pick what they like and edit out damning evidence proving their guilt. Defendants are not entitled to their own facts on a 12(b)(6) motion and it must be denied.

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

## II. LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim will normally survive a motion to dismiss if it offers a "short and plain statement...showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

## III. FACTUAL ALLEGATIONS OF THE COMPLAINT

Chu Ding was born in Singapore. See Complaint, ECF No. 1 at ¶ 17. He moved to the United States in 2004 and became a U.S. citizen in 2006. *Id*. On July 2, 2024, Mr. Ding was in the parking lot of Costco, located at 12350 Carmel Mountain Road, San Diego, CA 92198. *Id*. ¶ 20. As Mr. Ding was approaching his car in the parking spot, he saw that Defendant Jonathan Ferraro had parked his car in the middle of the row, blocking multiple cars. *Id*. ¶ 22. Ferraro was not moving. *Id*. Mr. Ding tapped on the passenger side window so that Ferraro would know that Mr. Ding was leaving and Ferraro could take Mr. Ding's parking spot. *Id*. ¶ 23. Ferraro moved his car forward. *Id*. ¶ 24. Chu Ding walked back to his car. *Id*. ¶ 25. But Ferraro reversed his truck, now fully blocking Mr. Ding and preventing him from leaving. *Id*. Ferraro remained stationary with his truck blocking cars parked

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

on either side of Mr. Ding. *Id*. ¶ 26. After waiting another ten seconds or so, Mr. Ding approached Ferraro's truck. *Id*. ¶ 27. Because Ferraro's truck had fully tinted windows, Mr. Ding could not see anything or anyone inside the truck. *Id*. ¶ 28. Because he could not see into the car, Mr. Ding tapped on the trunk of the car to get Ferraro's attention to let him know he was trying to leave. *Id*. ¶ 29. Mr. Ding then turned around to get into his car. *Id*. ¶ 30. Ferraro sprung out of his truck and began yelling. *Id*. ¶ 31. He screamed, "why did you hit my car, you Chinese piece of shit." *Id*. ¶ 32. At this point, Chu Ding walked towards Ferraro's truck and told him to move his truck. *Id*. ¶ 33. Ferraro screamed at Mr. Ding that he (Ferraro) was a police officer. *Id*. ¶ 34. Ferraro was off duty at the time; he was driving his personal vehicle and wearing civilian clothes. *Id*. ¶ 35. While the two men were yelling, Ferraro pushed Mr. Ding. *Id*. ¶ 36. Mr. Ding never touched Ferraro before Ferraro's aggressive shove. Within seconds of the two men facing each other and putting hands on each other's arms, Ferraro picked Mr. Ding up and slammed him to the ground. *Id*. ¶ 37. Mr. Ding lost consciousness. *Id*. ¶ 38. After knocking Mr. Ding unconscious, Ferraro called SDPD to ask for assistance. *Id*. ¶ 39.

SDPD police officers arrived approximately ten minutes later and Defendant Patrick Richards immediately handcuffed Mr. Ding while he was still laying on the concrete ground of the parking lot. *Id*. ¶ 40. Richards handcuffed Mr. Ding and propped him up to a sitting position. *Id*. ¶ 41. An ambulance arrived around five minutes later. *Id*. ¶ 42. When the medics arrived, Mr. Ding was sitting on the ground, handcuffed behind his back and unable to move. *Id*. ¶ 43. The medics placed Mr. Ding on a gurney. *Id*. ¶ 42. Mr. Ding declined to go to the hospital in an ambulance because he believed he would be released shortly and his wife would go with him to the ER. *Id*. ¶ 44. By this time, there were six uniformed officers in three marked police vehicles present. *Id*. ¶ 45.

When Mr. Ding declined to go into the ambulance, Defendant Patrick Richards and/or Does 1-5 handcuffed Mr. Ding again and placed him in the

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

backseat of Richards' patrol car. *Id*. ¶ 46. Richards and Does had asked no questions of Mr. Ding or anyone else before handcuffing and detaining Mr. Ding. *Id*. ¶ 47. Richards was advised and knew before arriving at Costco that the incident involved Ferraro, a fellow officer. *Id*. ¶ 48. These defendants kept Mr. Ding in the patrol car for hours, waiting for detectives to arrive. *Id*. ¶ 49.

Defendant Emilee Emamjomeh and Doe 6, a detective, eventually arrived. *Id*. ¶ 50. These detectives went inside Costco to review and retrieve the footage from the surveillance cameras. *Id*. ¶ 51. Even though the relevant surveillance footage was only a few minutes long and Defendants knew they could obtain it from Costco within minutes, Richards and Does 1-6 confined Mr. Ding to the backseat of a patrol car for hours. *Id*. ¶ 53. During this time, Richards found out that Mr. Ding worked for the Department of Homeland Security and spoke to Ferraro and Does 1-25, including supervisors. *Id*. ¶¶ 54-55. For hours, these defendants were speaking to each other. *Id*. ¶ 56. During this time, not a single defendant asked Mr. Ding what had occurred. *Id*. ¶ 57. Richards, Emamjomeh and Doe 6 placed Mr. Ding under arrest for a claimed violation of Penal Code § 69(a), Obstructing or Resisting an Executive Officer, a felony. *Id*. ¶ 61.

Richards then drove Mr. Ding to the police station instead of Central Jail for booking. *Id*. ¶ 62. There was no legitimate basis to take Mr. Ding to the police station instead of the Jail where Mr. Ding would have been screened by a nurse. *Id*. ¶ 63. Though they knew that Mr. Ding had been slammed to the ground on his shoulder and head and that he was disoriented and in excruciating pain, Richards, Emamjomeh and Doe 6 interrogated Mr. Ding at the station instead of getting him medical attention. *Id*. ¶¶ 66-68. They refused to provide Mr. Ding more than one single cup of water, even though he asked for water several times. *Id*. ¶¶ 70-72. Instead, Emamjomeh and Doe 6 told Mr. Ding to write an apology letter to Ferraro. *Id*. ¶ 73. They relayed their version of events and played a short clip of the surveillance footage. *Id*. ¶¶ 74-75. They told Mr. Ding he needed to write the letter

because he was resisting arrest. *Id*. ¶ 75. Mr. Ding struggled to write the letter because he was disoriented and in severe pain. *Id*. ¶¶ 76-77. Mr. Ding wrote whatever Emamjomeh and Doe 6 wanted so he could be taken to get medical attention. *Id*. ¶ 78. The only reason Richards, Emamjomeh and Doe 6 kept Mr. Ding in custody for hours after Mr. Ding suffered a concussion was to cover up Ferraro's misconduct. *Id*. ¶ 80. They knew that the surveillance footage showed Ferraro to be the aggressor and the District Attorney would reject the case against Mr. Ding. *Id*. ¶ 81. When Mr. Ding signed the apology letter, Emamjomeh told Mr. Ding he was under arrest. *Id*. ¶ 82. A Commander at the substation told Richards to take Mr. Ding to the Emergency Room after Mr. Ding's wife had called the station and told him that Mr. Ding needed medical care. *Id*. ¶¶ 83-87. In the patrol car, Richards complained that taking him to the hospital would be "a waste of time" because it would be quicker for Mr. Ding to be processed and released at the Jail. *Id*. ¶ 88. He placed Mr. Ding in tight handcuffs behind his back and refused to loosen them, even though Mr. Ding suffered extreme pain. *Id*. ¶¶ 89-90.

Mr. Ding arrived at the ER with elevated blood pressure and multiple abrasions to his knee, lower bilateral anterior chest wall, right shoulder and the right side of his face. *Id*. ¶ 91. Mr. Ding was diagnosed with a separated shoulder, fracture, dislocation, contusion and concussion. *Id*. ¶¶ 95-96. His right arm was placed in a sling. *Id*. ¶ 99. As he was being discharged. Richards attempted to handcuff Mr. Ding's hands behind his back, despite being told Mr. Ding had a dislocated shoulder and a rib facture. *Id*. ¶ 100. The ER doctor would not permit this to occur and Richards finally agreed to handcuff Mr. Ding with his hands to the front. ¶¶ 100-101.

After he was discharged, Mr. Ding was booked into the Central Jail for felony resisting arrest. *Id*. ¶ 102. He was bailed out in the early hours of July 3 after spending 23-24 hours in custody. *Id*. ¶¶ 103-106. The District Attorney's Office declined to file charged against Mr. Ding. *Id*. ¶ 107.

Mr. Ding is an agent with the Department of Homeland Security. *Id*. ¶ 8. The agents who work with Mr. Ding checked the database of all people in custody in San Diego and saw that Mr. Ding had been arrested and booked for a felony. *Id*. ¶¶ 108-110. The allegation that Mr. Ding assaulted an off-duty police officer was forwarded to the Department of Homeland Security Office of Professional Responsibility *Id*. ¶ 111. It took nine months for that Office to clear Mr. Ding of any misconduct. *Id*. ¶ 112.

X-rays taken the day after Mr. Ding's arrest showed (1) a displaced fracture involving the right acromion; (2) separation of the right AC joint; and (3) a nondisplaced fracture of the rib cage. *Id*. ¶ 115. He suffered a headache, blurred vision, right shoulder pain and rib pain. *Id*. ¶ 116. He was later diagnosed with vertigo. *Id*. ¶ 118. Mr. Ding missed work for four months because of his injuries. *Id*. ¶ 119.

## IV. ARGUMENT

### A. A Dismissal of a Complaint Cannot Be Based on Defendants' Own Imaginings or Self-serving Narrative.

In the entirety of the Defendants' "statement of facts," they refer to the Plaintiff's complaint a total of ONE single time.  But instead of quoting the complaint, they rewrite it to their liking:

////

////

////

////

////

////

////

////

////

Case No. 25-cv-01683-AJB-JLB
PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

| What the Complaint Actually says | Defendants' Version of the Same Paragraph |
|---|---|
| Two days before the Fourth of July 2024, off duty police officer Jonathan Ferraro stopped his truck, blocking 53-year-old Chu Ding in a Costco parking lot. After Mr. Ding tapped on the trunk of the truck to let Ferraro know that he was leaving from his parking place, Ferraro jumped out of his truck, enraged, calling Mr. Ding a "Chinese piece of shit."  Plaintiff's complaint page 2, lines 4-7 | On July 2, 2024, off-duty San Diego police officer Jonathan Ferraro found himself in a tense encounter in a Costco parking lot. While waiting with his family in their pick-up truck for a parking spot located ahead and to the left, Ferraro's vehicle came to a halt in front of three other cars, one of which belonged to the Plaintiff Chu Ding. (ECF No. 14-1, 8:18-22) (purporting to quote Plaintiff's complaint page 2, lines 4-7 |

Remaining are a total of 54 assertions of "facts" that have nothing to do with the Plaintiff's complaint. Defendants offer their own story-telling, spanning six pages of the brief referring solely to outside materials including what Ferraro *thinks* the Costco video shows; what purports to be Defendant Richard's body worn camera footage in which Ferraro's story is being told entirely from Ferraro's perspective, justifying his conduct; and narrative from defendants' point of view of what they think they see in the footage of Emmajomeh's body worn camera.

The use of the body camera footage is impermissible given that the complaint makes no mention of them.  As to the Costco video, should the Court consider it because of its reference in the complaint, the Court must view the footage in the light most favorable to Plaintiff. Throughout their motion, Defendants narrate a story of what they would ***like*** to see in the footage. They label Mr. Ding as "the aggressor" who "charged at" Ferraro, while attributing "measured response" to Ferraro who was using "defending force."  Defendants' creative fiction violates the core principle that on a Rule 12(b)(6) motion, courts must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party.

A reasonable jury could conclude that because Mr. Ding had tapped on the truck, Ferraro decided to ignore Mr. Ding trying to leave and continue to intentionally block him in.  When Mr. Ding tapped on the truck again, Ferraro jumped out of the car so full of fury, he swung his car door open, almost hitting a car which was forced to go around him.  Agitated and angry, Ferraro left his car door open after he jumped out to confront Mr. Ding.  As he was going around the back of his truck, he came at Mr. Ding screaming, "you Chinese piece of shit."  Mr. Ding, who is trapped on all sides, vulnerable and sitting in his small sedan with nowhere to go, gets out of his car to defend himself against an enraged racist much bigger and younger than himself.  After less than one minute during which the two were tussling, Ferraro picked up Mr. Ding and threw him headfirst into the concrete pavement, knocking him out cold.  Ferraro's treatment of Mr. Ding as "a piece of shit" is shown clearly on the video when Ferraro walks away, leaving the unconscious Mr. Ding lying in the middle of the road without even a momentary glance. The truncated video provided by defendants does not allow the viewer to determine how long Mr. Ding was unconscious on the pavement.

### B. The Use of Cherry-Picked Video Footage is Unscrupulous and the Motion is Premature Pursuant to FRCP Rule 56(d)

In *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018), the Ninth Circuit noted a concerning pattern of parties exploiting procedures on using outside materials to improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage.  *Khoja* Held:

> [J]udicial notice and incorporation-by-reference do have roles to play at the pleading stage. The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.

*Id.*

*Khoja* found the risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access. *Id.* "If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Id.* at 999. Here, Plaintiffs had no access to the universe of materials obtained and maintained by the SDPD. Submitting cherry picked materials that reveal half-truths violates Rule 12(b)(6) and effectively transforms their motion into a request for summary judgment but without affording Plaintiff the procedural protections required by Rule 56, including the opportunity to conduct discovery and present counter-evidence. *Morley v. Smith*, 309 F. Appx. 103, 106 (9th Cir. 2009) ("We note that when converting a motion to dismiss to a motion for summary judgment, a judge is required to give the parties a 'reasonable opportunity to present all material pertinent to such a motion by Rule 56.'") Federal Rule of Civil Procedure 56(d) states:

(d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

Defendants have submitted a quasi-summary judgment motion in the guise of a 12(b)(6) dismissal request. This chimerical attempt to evade liability is based on the defendants' improper attempt to invoke judicial notice and should be rejected

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

out of hand. The defendants' factual assertions are made out of thin air or are ones which are contradicted by the video submissions themselves. Should the Court deem this misbegotten pleading as a motion for summary judgment, Plaintiff asks the Court to deny it to allow him to take discovery, and submit other evidence not yet transcribed which entirely supports the Complaint's allegations.

The Court may deny the motion or allow time for Plaintiff to obtain and review the entirety of the investigation and any internal affairs reports. After Plaintiff's repeated requests, the City produced other videos and documents on September 17, 2025. Plaintiff has not had sufficient time to review and transcribe most of these materials. It is obvious however that the City's submission was highly selective and excluded witness statements and body worn camera footage in which at least one witness told the investigators that Ferraro got out of his truck completely freaked out, screaming and yelling while several bystanders were telling him to calm down.

Defendants charged Chu Ding with a felony by hiding evidence, coercing a confession and telling only Ferraro's version of events to the District Attorney. They continue their efforts here to abuse their position of power by telling the same skewed, one-sided tale. This motion is improvidently brought and should be denied.

## C. Defendants Used Excessive Force.

### 1. Ferraro.

After screaming "you Chinese piece of shit" and nearly killing a man for tapping on his truck, Ferraro asserts that his use of force was reasonable.  Perhaps that level of force and use of racial slurs is not unusual for Ferraro, but that does not make it reasonable under the Fourth Amendment's objective standard. A Fourth Amendment claim of excessive force requires an examination of "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them," which "requires a careful balancing of the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the

countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (citations omitted). In assessing the countervailing governmental interests, courts consider the severity of the crime, whether the suspect poses an immediate threat or safety to the officers or others, and whether he is actively resisting or evading arrest. *Id*. at 396. "[F]orce, [even if] less than deadly, is not to be deployed lightly. To put it in terms of the test we apply: the degree of force used by [the police] is permissible only when a strong government interest *compels* the employment of such force. *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003) (emphasis original in *Drummond,* citing *Deorle v. Rutherford,* 272 F.3d 1272, 1280 (9th Cir. 2001). *See also Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) internal citation omitted. ("[T]he essence of the *Graham* objective reasonableness analysis" is that "'[t]he force which was applied must be balanced against the *need* for that force: it is the need for force which is at the heart of the *Graham* factors.'")

The only "crime" here was Mr. Ding tapping on Ferraro's truck. Mr. Ding could not have been "resisting arrest" because Ferraro, who was off-duty and in plainclothes, never told Mr. Ding that he was under arrest, making it impossible for Mr. Ding to resist something that he did not know was happening. Indeed, no reasonable person would believe that they were being placed under arrest by a man screaming "you Chinese piece of shit." The only "threat" Mr. Ding presented was defending himself against Ferraro who came at Mr. Ding screaming at him. Before Ferraro picked him up and smashed him into the pavement, Mr. Ding had inflicted no physical injury on Ferraro and had made no threats. The only physical act that had taken place was Mr. Ding attempting to come out from where he was cornered and the two men pushing each other (Ferraro shoving Mr. Ding first). Ferraro's use of force in picking Mr. Ding up and smashing him into the ground and knocking him out cold was objectively unreasonable.

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

Ferraro argues that he is entitled to qualified immunity because he has not been able to locate any case putting him on notice that his conduct was unconstitutional. It is true that there is no Ninth Circuit precedent on an off-duty officer screaming racial epithets while cornering and menacing someone and then knocking them unconscious. However, it was clearly established that "[t]he use of excessive force by police officers in an arrest violates the arrestee's Fourth Amendment right to be free from an unreasonable seizure." *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986). "The reasonableness of force is analyzed in light of such factors as the requirements for the officer's safety, the motivation for the arrest, and the extent of the injury inflicted." *Id*. Clearly Ferraro was not concerned for his safety because he initiated the encounter by aggressively rushing Mr. Ding. His motivation was made clear by his angry use of racial epithet.  The extent of Mr. Ding's injury was serious and could have been life-threatening.

In *Andrews v. City of Henderson*, 35 F.4th 710 (9th Cir. 2022), the Ninth Circuit affirmed denial of qualified immunity to two plainclothes detectives who tackled plaintiff Daniel Andrews without warning as he exited a courthouse, fracturing his hip and requiring two surgeries. *Id*. at 713, 720. Even though Andrews was suspected of armed robbery, a serious felony, the Court held that a reasonable jury could find the force violated the Fourth Amendment because Andrews posed no immediate threat, was not resisting or fleeing, and the detectives failed to provide warning or attempt less intrusive arrest methods. *Id*. at 717-718. The Court found the law was clearly established under *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) that officers cannot tackle a "relatively calm, non-resisting suspect" without warning when the suspect poses little safety threat and officers have not attempted a less violent means of arrest. *Id*. at 719.

Under California law, claims for assault and battery against police officers are resolved under the same liability standard as a § 1983 action. *Saman v. Robbins*,

Case No. 25-cv-01683-AJB-JLB

173 F.3d 1150, 1156 n. 6 (9th Cir. 1999). Because Plaintiff has alleged a claim for excessive force, he has also properly pled a claim for assault and battery.

### 2. Richards.

By the time Richards arrived, Ferraro had left Mr. Ding unconscious in the middle of the parking lot like discarded roadkill. Richards claims that his conduct in immediately handcuffing an injured man was reasonable because American criminals have a long tradition of armed violence and many law enforcement officers are killed in the line of duty. So it must have been terrifying for Richards, in full tactical gear, to encounter a 53 year old unarmed man with a concussion, a fractured rib and a separated shoulder passed out in a parking lot. Richard's alleged terror aside, under the Fourth Amendment, a reasonable officer encountering a man who is concussed and suffering from obvious injuries, would not have placed handcuffs to tight that it would leave marks on the wrist visible ***the next day***.



Richards continued to inflict unnecessary pain and suffering by handcuffing him during the hospital transport after complaining that taking Mr. Ding to the hospital was a waste of his time. At the hospital, after being told that Mr. Ding had

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

a fractured rib and a separated shoulder, Richards assaulted him by making attempts to handcuff him behind his back.  Mr. Ding was wearing a sling. Richards only begrudgingly backed down when an emergency room doctor intervened to stop him. Richards' conduct was objectively unreasonable. Inflicting pain and injury on Mr. Ding and attempting to further injure his separated shoulder served no legitimate law enforcement purpose. An excessive force claim for tight handcuffing applies "where a plaintiff claims to have been demonstrably injured by the handcuffs or where complaints about the handcuffs being too tight were ignored." *Arias v. Amador*, 61 F. Supp. 3d 960, 976 (E.D. Cal. 2014) (citing *Dillman v. Tuolumne Cnty.*, No. 1:13-CV-00404 LJO, 2013 2013 WL 1907379, at *8 (E.D. Cal. May 7, 2013)).

"It is well-established that overly tight handcuffing can constitute excessive force." *Wall v. Cnty. of Orange,* 364 F.3d 1107, 1112 (9th Cir. 2004) (citing *Meredith v. Erath*, 342 F.3d 1057, 1061, 1063–64 (9th Cir. 2003); *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000)).  Richards is not entitled to qualified immunity and he is guilty of assault and battery.

### D. Plaintiff Has Sufficiently Alleged that He Was Wrongfully Detained, Falsely Arrested and Imprisoned under Second, Third, and Eighth Causes of Action.

Defendants move to dismiss these claims based on the assertion that Mr. Ding admitted that he was the aggressor and that Mr. Ding attacked Ferraro. Because none of these things happened, and the defendants are required to base their motion on the facts actually in the complaint, the motion should be denied.

As alleged, it was Ferraro who had intentionally boxed in Mr. Ding, fully knowing that he was there.  The person who was committing a crime was Ferraro himself for blocking in a parked car in violation of the Vehicle Code and falsely imprisoning him.  Ferraro knew there was no basis to legally detain or arrest Mr. Ding because he shot out of his car, fuming and screaming obscenities.  He then

rushed toward him, forcing Mr. Ding to defend himself.  At no point did Ferraro issue commands to Mr. Ding.  After forcing Mr. Ding to defend himself from a vicious attack by a racist, Ferraro detained him by knocking him out.

Richards and Emamjomeh maintain they had sufficient probable cause based on the information they obtained in the parking lot because the information they received was that Mr. Ding charged at Ferraro; Ferraro announced he was police; and Mr. Ding attacked Ferraro.  If the probable cause for his arrest was based on this information they obtained while at Costco, then why take Mr. Ding to the police station and interrogate him to have him sign an "apology letter?"  Why deny him medical attention, food or water for hours? They knew that Mr. Ding had lost consciousness because they saw the footage with their own eyes.  Yet they kept him for hours, questioning him in order to get him to sign a false confession.  The time between Richards handcuffing Mr. Ding and Mr. Ding's arrival at hospital was approximately five hours.  Taking the facts in light most favorable to the Plaintiff, these defendants knew there was no probable cause and they knew the District Attorney would never file charges.  Knowing that Ferraro had just knocked a federal agent out in a parking lot rage, they falsely charged him with a felony so that they could cover up for Ferraro.

A right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006). The Court looks to "whether a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time." *Kennedy*, 439 F.3d at 1065. As to the law that existed at the time, the Court "need not find a prior case with identical, or even materially similar facts;" it is enough that "the preexisting law provided the defendants with fair warning that their conduct was unlawful." *Id.* at 1065 (internal quotations omitted). Though officers must be fairly

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

on notice that their conduct was unconstitutional, defining the "right allegedly violated" in too much detail allows "officials, and future defendants, to define away all potential claims." *LSO*, 205 F.3d at 1158. Defendants were on notice that detaining, arresting, and imprisoning someone with no basis was against the law.

"The standards by which we measure the legality of such stop and resulting detention under the Fourth Amendment are well established." *Robinson v. City of San Diego*, 954 F. Supp. 2d 1010, 1018 (S.D. Cal. 2013)(quoting *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)). The law was clearly established that an officer must have a "particularized and objective basis" to suspect legal wrongdoing before detaining a person." *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). To satisfy the Fourth Amendment's reasonableness requirement, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez–Soto,* 205 F.3d 1101, 1104–05 (9th Cir. 2000) (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir.1996)). As to the arrest, "[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011).

The crime of deterring, preventing, or resisting an officer by force and violence under Penal Code 69 requires that the officer be engaged in the lawful performance of his duties. *See People v. Rodriguez*, 207 Cal. App. 4th 1540, 1543 (App. 2 Dist. 2012). Ferraro was not on duty and not in uniform. The duties of a policeman do not include engaging in off duty menace and assault. It was clearly established that because Mr. Ding had committed no criminal act, there was no basis to detain him or arrest him. Because it was clearly established Mr. Ding could not have been resisting Ferraro who was not engaged in the lawful performance of his duties, his detention and arrest were unlawful. No defendant is entitled to qualified immunity.

Case No. 25-cv-01683-AJB-JLB
PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

### E. Plaintiff Has Stated a Claim Against Defendants Wahl and Ealson for Failure to Supervise and Discipline.

"Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations omitted). A supervisor may be liable if he is either (1) personally involved in the constitutional deprivation; or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

The Complaint alleges that Ealson personally participated in Mr. Ding's Constitutional violations because he reviewed the evidence against Mr. Ding and knew that his arrest was baseless and without probable cause. Complaint, ¶ 245. Yet he took no action to prevent the case from being presented to the District Attorney. *Id*. Ealson had personal experience with Ferraro and knew of his violent and racist tendencies but took no action to supervise him or correct or discourage his unlawful use of authority. *Id*. ¶ 246. Ealson's contention that Plaintiff is required to allege precisely what documents he reviewed and specific examples of his knowledge of Ferraro's dangerous propensities is baseless. The complaint need not contain detailed factual allegations to survive a 12(b)(6) motion. *Bell*, 550 U.S. at 555. Plaintiff has given adequate notice of the nature of his claims. *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011) ("The theory of Rule 8a, and of the federal rules in general, is notice pleading."). Nothing more is required.

Further, contrary to Wahl's assertion, Plaintiff does not need to allege the he was personally present or involved in the events surrounding Mr. Ding. In *Starr*, 652 F.3d 1202, the Ninth Circuit held that Starr had properly pled a claim of deliberate indifference against Sheriff Baca by pleading specific factual allegations

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

which "plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to *Starr*." *Id.* at 1216. A successful plaintiff must allege facts showing the supervisor knew of the pattern, so the inaction constituted an "intentional decision." *Sandoval v. County of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021).

Here, Plaintiff had alleged an extensive pattern of misconduct, lack of discipline, retaliation against whistleblowers, and systemic coverups that was known to Wahl and Ealson. This included the conduct of Ariel Savage and Daniel McClain, who unlawfully detained a car full of people then pepper sprayed, tased and dragged them out of the car. Complaint, ¶ 122. In the subsequent lawsuit, the Court found that as a matter of law, Savage and McClain unlawfully detained the occupants of the car. *Id.* ¶ 125. While this case was pending, these officers were reported to Internal Affairs for unlawfully arresting another citizen and giving him a "rough ride." *Id.* ¶ 127. They later falsely arrested yet another plaintiff in downtown San Diego. *Id.* ¶ 128. Even after these events, Savage and McClain were promoted and now train and supervise other officers. *Id.* ¶¶ 129, 131-132.

Defendants were aware of the conduct of Neal Browder, who fatally shot an unarmed man carrying only a pen and who later accidentally discharged his weapon into a baby's crib during a probation check, yet faced no discipline, was promoted and continued to receive substantial compensation. *Id.* ¶¶ 133-147. The Complaint alleges a pervasive "code of silence" culture where police misconduct was routinely covered up by other officers. *Id.* ¶¶ 148-159. Expert testimony from *Doe*, 35 F. Supp. 3d 1233, 1244 (S.D. Cal. 2014) found that the SDPD lacked mandatory reporting policies (*Id.* ¶¶ 151-152) and there was an unwritten rule that "what happens in the field stays in the field. *Id.* ¶ 157.

Defendants knew of rampant problems of officers making racist and sexually inappropriate comments using excessive force, as documented by inewsource and KPBS. *Id.* ¶ 166-171. Yet when the SDPD published records of sustained

Case No. 25-cv-01683-AJB-JLB

misconduct findings, one third of the reports were missing disciplinary records. *Id*. ¶¶ 167-169. The Complaint further alleges that racism and misconduct were so widespread within the SDPD, that officers openly compared Black officers to primates in front of fellow officers and supervisors. *Id*. ¶ 192. Despite their knowledge, there was a lengthy history of supervisors failing to investigate and discipline officers misconduct ranging from excessive force, sexual harassment and racism that created a culture in which officers believe they are above the law. *Id*. ¶ 197.

Wahl and Ealson were personally aware that their subordinates were routinely covering up for fellow officers' misconduct and engaging in retaliatory action against innocent citizens. *Id*. ¶ 247. They were personally aware of the pattern of the code of silence among their employees. *Id*. ¶ 248. They were personally aware of the pattern of charging innocent people with resisting arrest to cover up the misconduct of police officers. *Id*. ¶ 249. Wahl was aware of these things because he had been with the Department for two decades and served in the chain of command for years. *Id*. ¶¶ 253-254. He knew of a history retaliation against officers who report misconduct. *Id*. Despite this knowledge, Wahl and Elson condoned or acquiesced in the abusive behavior of police officers by refusing to train them, discipline them, or correct their behavior. *Id*. ¶ 250.

Instead, officers who engaged in misconduct and dishonesty were consistently promoted to supervisory roles in which they would train and supervise newer officers entering the force. *Id*. ¶ 251. The lack of adequate supervision and discipline caused Mr. Ding's damages. *Id*. ¶ 259. Defendants accuse Plaintiff of conflating the supervisory claim against Whal with the *Monell* claim against the City. While the factual basis for the failure to supervise and discipline overlaps with the factual basis for Plaintiff's *Monell* claims, Plaintiffs are entitled to bring multiple causes of action or theories based on the same set of facts and Defendants cite no authority holding otherwise. Plaintiff has sufficiently alleged a § 1983 claim

PLAINTIFF'S OPPOSITION TO INDIVIDUAL CITY DEFS' MOTION TO DISMISS

against the supervisory defendants for the failure to properly supervise and discipline their staff.

It was clearly established that supervisory officials may not turn a blind eye or acquiesce in their subordinates' constitutional violations. *Starr*, 652 F.3d at 1208. Thus, if supervisory officials know that their subordinates are violating clearly established rights, their failure to take action to stop such conduct also violates constitutional rights. *Id*. Defendants are not entitled to qualified immunity.

### F.  Plaintiff Has Sufficiently Alleged a Negligence Cause of Action.

Because Mr. Ding has sufficiently alleged his constitutional claims, he has likewise alleged his negligence cause of action against each defendant.

### G. Plaintiff Has Sufficiently Alleged a Bane Act Violation.

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). "[T]he Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 798-799 (2017)). But it does require "a showing of the defendant's specific intent to violate the plaintiff's constitutional rights." *Reese*, 888 F.3d at 1043. Specific intent can be proven by evidence of recklessness. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019).

Plaintiff properly alleged an excessive force claim, in which threat, intimidation, or coercion are inherent. *See Reese*, 888 F.3d at 1043. Likewise an allegation of false arrest and imprisonment gives rise to Bane Act liability. See *Mehta v. City of Sunnyvale*, 721 F. Supp. 3d 1041, 1049 (N.D. Cal. 2024); *Cornell*, 17 Cal. App. 5th at 803, as modified (Nov. 17, 2017) (holding the right to be free

from arrest without probable cause is plainly capable of supporting a Bane Act claim).

### H. Plaintiff Has Sufficiently Stated a Claim for Intentional Infliction of Emotional Distress.

Screaming "you Chinese piece of shit" and attacking a man for tapping on his truck inflicted emotional distress on Mr. Ding.  Interrogating the victim for hours while denying him food, water or medical care for his concussion, fractured rib and separated shoulder is something not usually tolerated in civilized communities.  Knowing that a person has just been treated for serious injuries to his ribs and shoulders, Richards attempted to handcuff Mr. Ding to the back.  This was after he had already inflicted pain and injury by tightening the handcuffs and leaving him in that condition for hours.  These defendants set out to frame and to victimize Mr. Ding based on his race and ethnicity.  They set out to frame him for a crime he did not commit in order to cover up for a fellow officer.  This is the very definition of outrageous conduct.

### V. CONCLUSION

Plaintiff respectfully requests that the Court deny the Individual City Defendants' motion to dismiss. In the alternative, should the Court find any deficiency in the pleading, Plaintiff respectfully requests leave to amend.

DATED: September 24, 2025              Respectfully submitted,

                                                      **IREDALE AND YOO, APC**

                                                      *s/ Julia Yoo*

                                                      **EUGENE IREDALE**
                                                      **JULIA YOO**
                                                      **SARAH MUSUMECI**
                                                      Attorneys for Plaintiff CHU DING