# Exhibit 2



**KeyCite Yellow Flag**
Distinguished by Rice v. Tinsley, N.D.Ga., February 13, 2025

107 F.4th 1292
United States Court of Appeals, Eleventh Circuit.

Charles JOHNSON, Jr., Plaintiff-Appellant,
v.
CITY OF ATLANTA, Garrett Rolfe, Defendants-Appellees.

No. 22-11359
|
Filed: 07/12/2024

**Synopsis**

**Background:** Arrestee brought action under § 1983, Monell, and Georgia state law, against police officer and city, alleging excessive force and battery. City moved to dismiss for failure to state a claim, and officer moved for judgment on the pleadings. The United States District Court for the Northern District of Georgia, No. 1:21-cv-01977-JPB, J.P. Boulee, J., 2022 WL 836300, granted motions. Arrestee appealed.

**Holdings:** The Court of Appeals, Branch, Circuit Judge, held that:

[1] district court properly considered police body camera and dashboard camera footage under incorporation-by-reference doctrine in ruling on officer's motion for judgment on the pleadings;

[2] officer was entitled to qualified immunity from arrestee's § 1983 claim alleging excessive force;

[3] district court properly dismissed arrestee's Monell claim against city; and

[4] officer had official immunity from arrestee's excessive force and battery claims under Georgia law.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim; Motion for Judgment on the Pleadings.

West Headnotes (17)

[1]  **Civil Rights**  Governmental Ordinance, Policy, Practice, or Custom

To state a *Monell* claim against a municipality or other local government, a plaintiff must allege facts showing: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.

6 Cases that cite this headnote

[2]  **Federal Civil Procedure**  Clear right to judgment
**Federal Civil Procedure**  Want of Fact Issue

Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c).

7 Cases that cite this headnote

[3]  **Federal Civil Procedure**  Matters considered
**Federal Civil Procedure**  Matters considered in general
**Summary Judgment**  Conversion of Other Motions
**Summary Judgment**  Motion to dismiss

There are two exceptions to the general rules that, when ruling on a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings, a court may not consider matters outside the pleadings without converting motion to one for summary judgment: (1) the incorporation-by-reference doctrine and (2) judicial notice. Fed. R. Civ. P. 12(b)(6), (c), (d).

66 Cases that cite this headnote

[4]  **Courts**  Number of judges concurring in opinion, and opinion by divided court

"Prior panel precedent rule" provides that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.

[5] Courts ← Dicta

The "holding" of a case is comprised both of the result of the case and those portions of the opinion necessary to that result.

[6] Courts ← Dicta

"Dicta" is defined as those portions of an opinion that are not necessary to deciding the case then before the Court of Appeals.

[7] Courts ← Decisions of Same Court or Co-Ordinate Court

When the Court of Appeals has conflicting case law, it follows oldest precedent.

[8] Federal Civil Procedure ← Matters considered

Federal Civil Procedure ← Matters considered in general

When resolving motion to dismiss for failure to state a claim or motion for judgment on pleadings, court may properly consider document not referred to or attached to complaint under incorporation-by-reference doctrine if document is (1) central to plaintiff's claims and (2) undisputed, meaning that its authenticity is not challenged. Fed. R. Civ. P. 12(b)(6), (c).

113 Cases that cite this headnote

[9] Federal Civil Procedure ← Matters considered

District court properly considered police body camera and dashboard camera footage under incorporation-by-reference doctrine in ruling on officer's motion for judgment on the pleadings in arrestee's § 1983 action alleging excessive force in violation of Fourth Amendment; footage clearly depicted events central to arrestee's claims and showed interaction between officer and arrestee from time officer pulled arrestee over through placing him in the back of his patrol vehicle, and there was no claim that the videos were altered in any way or did not depict what actually occurred. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983; Fed. R. Civ. P. 12(c).

12 Cases that cite this headnote

[10]  **Search, Seizure, and Arrest** 🔑 Particular cases in general

Police officer was entitled to qualified immunity from arrestee's § 1983 claim alleging officer used excessive force during arrest in violation of Fourth Amendment; officer was operating within scope of his discretionary authority when he placed arrestee under arrest, and level of force officer used in tackling defendant during arrest was de minimis based on the totality of the circumstances, which included arrestee's refusal to comply with requests to place his hands behind his back and not pull away, arrestee's inebriated state, proximity to cars speeding on a major interstate at night in wet conditions, and risk of a multi-story fall off the highway. U.S. Const. Amend. 4; 🚩42 U.S.C.A. § 1983.

4 Cases that cite this headnote

[11]  **Public Employment** 🔑 Discretionary function immunity

Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they perform in carrying out their duties.

2 Cases that cite this headnote

[12]  **Civil Rights** 🔑 Criminal law enforcement; prisons

District court properly dismissed arrestee's 🚩*Monell* claim against city, based on police officer's use of force in conducting arrest, where no underlying constitutional violation had occurred. U.S. Const. Amend. 4.

1 Case that cites this headnote

[13]  **Public Employment** 🔑 In general; official immunity

Under Georgia law, the doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity.

[14]  **Public Employment** 🔑 Discretionary function immunity

Under Georgia law, official immunity is a matter of the state constitution and establishes that officers carrying out their discretionary duties are only subject to suit when performed with actual malice or intent to cause injury. Ga. Const. art. 1, § 2, para. 9(d).

1 Case that cites this headnote

[15]  **Public Employment** ⚷ In general; official immunity

In the context of Georgia's official immunity doctrine, actual malice requires a deliberate intention to do wrong. Ga. Const. art. 1, § 2, para. 9(d).

[16]  **Public Employment** ⚷ In general; official immunity

Under Georgia law, a deliberate intention to do wrong such as to constitute the actual malice necessary to overcome official immunity must be the intent to cause the harm suffered by the plaintiffs. Ga. Const. art. 1, § 2, para. 9(d).

[17]  **Assault and Battery** ⚷ Privilege or immunity

**Municipal, County, and Local Government** ⚷ Police, law enforcement, and public safety

**Public Employment** ⚷ Law enforcement personnel

Under Georgia law, police officer had official immunity from arrestee's excessive force and battery claims, arising out of officer having tackled arrestee during traffic stop, where video showed that officer's tackle of arrestee was not done with intent of injuring arrestee, but rather was to secure arrestee, who was resisting arrest. Ga. Const. art. 1, § 2, para. 9.

1 Case that cites this headnote

 ***1294**  Appeal from the United States District Court for the Northern District of Georgia, D.C. Docket No. 1:21-cv-01977-JPB

**Attorneys and Law Firms**

Ralph Goldberg, Goldberg & Cuvillier, PC, Tucker, GA, Keith Foster, The Foster Law Firm, Atlanta, GA, for Plaintiff-Appellant.

Robert David Ware, Pearson K. Cunningham, Hall Booth Smith, PC, Atlanta, GA, Devin Mashman, Cannella Snyder, LLC, Decatur, GA, for Defendant-Appellee City of Atlanta.

Thomas M. Mitchell, Carothers & Mitchell, LLC, Buford, GA, for Defendant-Appellee Garrett Rolfe.

Before Branch, Grant, and Ed Carnes, Circuit Judges.

**Opinion**

Branch, Circuit Judge:

Charles Johnson, Jr., sued Officer Garrett Rolfe and the City of Atlanta bringing claims under 42 U.S.C. § 1983, *Monell v. New York Department of Social Services*, [1] and Georgia state law, for injuries he sustained when Rolfe arrested him on the side of an interstate highway for driving while intoxicated. This appeal requires us to determine whether the district court properly considered video evidence—which was not mentioned in Johnson's complaint—showing Johnson refusing to comply with Rolfe's instructions and resisting being placed in handcuffs when it granted Rolfe's motion for judgment on the pleadings and the City's motion to dismiss. After review and with the benefit of oral argument, we conclude that because the video evidence (1) shows the events central to Rolfe's claims and (2) its authenticity is not challenged, the district court properly considered **\*1295** the videos under the incorporation-by-reference doctrine. And because the videos establish that Rolfe did not use excessive force and he did not intend to injure Johnson in arresting him, Rolfe is entitled to qualified immunity on Johnson's federal claims and official immunity on his state law claims. Accordingly, after careful review and with the benefit of oral argument, we affirm the district court's order.

## I. Background

*A. Allegations in the Complaint*

Johnson filed suit in the United States District Court for the Northern District of Georgia. His bare-boned complaint alleged the following.

"On or about May 22, 2020, [Johnson] was driving a vehicle while intoxicated" when Rolfe pulled him over. Johnson behaved in a respectful manner, did not raise his voice, never used any force against Rolfe, and did not otherwise provide Rolfe "with a legal basis to use force against him." However, because Johnson "did not comply with ... Rolfe's command as quickly as [Rolfe] would have liked, [Rolfe] grabbed him and after[ward] threw [Johnson] to the ground, thoroughly breaking [Johnson's] collar bone" which required two surgeries to repair.

Rolfe had a "history" of citizen complaints, including for shooting and killing a man. Johnson alleged that the City was responsible for Rolfe's alleged use of excessive force against him because it "encouraged, tolerated, ratified" and was deliberately indifferent to "policies, patterns, practices, and actions" related to "[t]he use of force by police officers; [t]he proper exercise of police power, including but not limited to the use of force; [and] [t]he failure to identify and to take remedial

or disciplinary actions against police officers who were the subject of prior citizen or internal complaints of misconduct."

Based on these allegations, Johnson brought five counts "under 42 U.S.C. § 1983 ... for the use of excessive force[ ] against him" as well as under Georgia law for excessive force and battery.[2]

[1] The City moved to dismiss Johnson's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Johnson's complaint failed to state a claim against the City for *Monell* liability because its threadbare allegations did not allege sufficient facts to plausibly establish that it had an official custom or policy, nor an unofficial custom or practice, that caused Johnson's injuries.[3]

**\*1296** Rolfe, on the other hand, answered the complaint and raised several affirmative defenses, including qualified immunity on the federal claims and official immunity on the Georgia state-law claims. Rolfe's answer referenced his body camera and dashcam footage, which he also filed with the court. Rolfe then moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the body camera and dashcam footage established that he did not use excessive force and he was therefore entitled to qualified immunity on Johnson's federal claims and official immunity on his state law claims. The body camera and dashcam footage that Rolfe attached to his answers tell a different story than the one Johnson alleged in his complaint.

  *B. Body Camera and Dashcam Footage*

On a rainy night, Rolfe pulled Johnson over for going 85 miles per hour in a 55 mile-per-hour zone on Interstate 85 in Atlanta, Georgia. Their vehicles were stopped on a bridge or overpass that was higher than the streetlights on the ground below, and only a waist-height wall separated Rolfe from the drop to his right. Rolfe approached Johnson's vehicle and spoke with him and his passenger. The officer asked Johnson if he had consumed any alcohol that night, and Johnson said no. Rolfe then noticed an open can of beer underneath Johnson's seat and instructed Johnson to step out of the vehicle. Rolfe began questioning Johnson regarding the open container, and Johnson initially denied drinking and driving. Johnson eventually admitted to drinking one beer during the course of the evening and after asking Johnson additional questions, Rolfe told Johnson he was going to conduct a field sobriety test. Johnson responded by saying he "just wanted to go home" and that he was safe to drive.

For approximately ten minutes, Rolfe attempted to conduct various field sobriety tests but after completing the first, Johnson continuously refused to complete any other tests. An at times emotional Johnson stated that he did not know if he would pass the tests, and he did not want to fail the tests because he did not want to lose his CDL license, which he had just reacquired. He also refused to perform a breathalyzer test. Throughout the encounter, Johnson continued to

request that Rolfe give him a "break" and please let him leave and just let Johnson's passenger—who had also been drinking—drive. Eventually Rolfe informed Johnson that he was placing him under arrest based on the facts Rolfe knew: Johnson (1) was speeding in unsafe conditions (the roads were wet); (2) had an open container of alcohol in the vehicle; (3) initially lied to Rolfe about drinking; (4) was exhibiting signs of impairment; and (5) was refusing to perform any sobriety tests. Accordingly, Rolfe instructed Johnson to place his hands behind his back so that he could handcuff him.

As Rolfe attempted to handcuff Johnson, Johnson repeatedly refused to put both hands behind his back and pulled his hands away multiple times. Rolfe told Johnson to put his hands behind his back four times in a row, told him not to pull away, and then told him again to put his hands behind his back. Johnson jerked his right arm away. Rolfe said: "Hey, hey, hey: Put your hand behind your back. Put your hand behind—don't pull away from—". Rolfe then tackled Johnson by wrapping his right arm around Johnson's torso and taking him to the ground. Rolfe landed partially on Johnson, with his upper body on Johnson's back and his legs and hips on the pavement to the side of Johnson. Once on the ground, Johnson continued to refuse Rolfe's instructions to place his hands behind his back until Johnson's *1297 passenger told him to "calm down" multiple times. After finally handcuffing Johnson, Rolfe helped Johnson to his feet and told him he was under arrest for DUI. Rolfe placed Johnson in the back of Rolfe's patrol vehicle, and Johnson told Rolfe that he dislocated his shoulder. Rolfe asked Johnson multiple times if he needed an ambulance, and Johnson said he would just "deal with it." Aside from Johnson's statements that he had dislocated his shoulder, there was no indication in the videos that Johnson was in pain or injured in any way.

*C. District Court's Ruling on the City's Motion to Dismiss and Rolfe's Motion for Judgment on the Pleadings*

Johnson opposed both the City's 12(b)(6) motion and Rolfe's 12(c) motion, arguing that the district court could not consider the footage in deciding Rolfe's Rule 12(c) motion because his complaint did not attach the videos as exhibits or otherwise refer to the videos. He also argued that the videos were not central to his claims and asserted that the body camera footage was not conclusive because it did not show Rolfe take Johnson to the ground.[4] At bottom, Johnson argued that based solely on the allegations in the complaint as well as Rolfe's answer, Rolfe was not entitled to judgment on the pleadings and Johnson had stated a viable claim for 🚩*Monell* liability against the City.

The district court granted Rolfe's Rule 12(c) motion and the City's Rule 12(b)(6) motion. First, it determined that even though Johnson did not refer to the body camera and dashcam footage in his complaint, it could nevertheless consider videos under the incorporation-by-reference doctrine because they were central to Johnson's claims and Johnson did not challenge their authenticity. Then, based on the videos' contents, it determined that (1) Rolfe's use of force was objectively reasonable and he was therefore entitled to qualified immunity on Johnson's federal claims;[5] (2)

Rolfe was entitled to official immunity on Johnson's state-law claims because Rolfe did not intend to hurt Johnson; and (3) the *Monell* claim against the City was due to be dismissed because there was no underlying violation of excessive force. The district court also determined that the *Monell* claim against the City was due to be dismissed "for the independent reason that the threadbare allegations in the Complaint [did] not sufficiently allege that the City had a custom or policy that constituted deliberate indifference to Johnson's constitutional rights and that such policy or custom caused Rolfe's alleged violations."

Johnson timely appealed the district court's order.

## II. Standard of Review

**[2]** We review a district court's grant of Rule 12(b)(6) and 12(c) motions *de novo*. *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 940 (11th Cir. 2023); *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1294 (11th Cir. 2023). "Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cont'l Cas. Co.,* 73 F.4th at 940. For both 12(b)(6) and 12(c) motions we accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Myrick*, 69 F.4th at 1294; **\*1298** *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

## III. Discussion

Johnson raises three primary arguments on appeal. First, he argues that the district court improperly considered the body camera and dashcam footage in ruling on Rolfe's motion for judgment on the pleadings. Second, he argues that the district court erred in determining that Rolfe was entitled to qualified immunity on Johnson's federal claims and official immunity on his state-law claims. And third, he argues that because the district court incorrectly found that Rolfe did not use excessive force while arresting him, it likewise erred in granting the City's motion to dismiss on his *Monell* claim. We address the first two arguments and reject them in turn. And because no constitutional violation occurred, Rolfe cannot succeed on his *Monell* claim against the City.

   *A. Rolfe's body camera and dashcam footage.*
Johnson argues on appeal that the district court erred in considering the body camera and dashcam footage under the incorporation-by-reference doctrine because (1) the footage is not a written instrument and therefore cannot be incorporated under Federal Rule of Civil Procedure 10(c); and (2) his complaint did not reference the footage. His first argument is foreclosed by our precedent. In

*Horsley v. Feldt*, we extended the applicability of the incorporation-by-reference doctrine from 12(b)(6) motions to 12(c) motions and in doing so explained that the "written instrument" provision of Rule 10(c) had no bearing "insofar as the incorporation by reference doctrine is concerned." 304 F.3d 1125, 1134–35 (11th Cir. 2002). And in *Baker v. City of Madison, Alabama*, in an excessive force case, we applied the incorporation-by-reference doctrine to police body camera footage. 67 F.4th 1268, 1276–77 (11th Cir. 2023). His second argument, however, requires us to closely examine our circuit's precedent regarding the incorporation-by-reference doctrine to determine whether a court may consider evidence not referred to in the complaint in deciding a motion for judgment on the pleadings.

[3] Pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, when ruling on a Rule 12(b)(6) or 12(c) motion, a court generally may not consider matters outside of the pleadings without treating the motion as a motion for summary judgment, and if it treats the motion as one for summary judgment, the court must give a reasonable opportunity for the parties to present all evidence that is relevant to the motion. Fed. R. Civ. P. 12(d). However, "[t]here are two exceptions to this conversion rule: (1) the incorporation-by-reference doctrine and (2) judicial notice." *Baker*, 67 F.4th at 1276. At issue here is the incorporation-by-reference doctrine.

*1. The proper test for the incorporation-by-reference doctrine.*

We have issued seemingly conflicting opinions about what is required for a court to consider a document not attached to a complaint under the incorporation-by-reference doctrine. In some of our opinions, we have stated that the incorporation-by-reference doctrine only has two requirements: that the document be "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley*, 304 F.3d at 1134; *see also Julmist v. Prime Ins. Co.*, 92 F.4th 1008, 1016 (11th Cir. 2024) (determining the district court appropriately considered an insurance policy attached to the motion to dismiss because it was central to the plaintiff's claims and undisputed); *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 n.2 (11th Cir. 2017) ("[T]he district court was permitted *1299 to consider [an agreement and a memorandum about that agreement that were not attached to the operative complaint] because they were central to [the plaintiff's] claims and neither party disputed their authenticity."); *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 n.12 (11th Cir. 2014) ("[O]n a motion for judgment on the pleadings, documents that are not part of the pleadings may be considered, as long as they are central to the claim at issue and their authenticity is undisputed."); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (explaining that even where the complaint does not mention a document, "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of its authenticity."); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court

Case 3:25-cv-01683-AJB-JLB   Document 29-2   Filed 10/06/25   PageID.283   Page 12 of 19
**Johnson v. City of Atlanta, 107 F.4th 1292 (2024)**
119 Fed.R.Serv.3d 243, 30 Fla. L. Weekly Fed. C 1128

may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claims and (2) undisputed.").

We have stated in other opinions, however, that three requirements must be met: (1) the plaintiff must refer to the documents in the complaint; (2) those documents must be central to the plaintiff's claim; and (3) the documents' contents must not be disputed, meaning the documents' authenticity are not challenged. *Baker*, 67 F.4th at 1276; see also *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."); *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1237–38 (11th Cir. 2014) (declining to consider a contract at the motion-to-dismiss stage partially because the contract was not attached to the complaint nor was it referred to in the complaint); *Smith v. Casey*, 741 F.3d 1236, 1239 n.2 (11th Cir. 2014) (determining that we could consider a contract not attached to the complaint because it was nevertheless "referred to in the complaint, [was] undisputed, and [was] central to the [plaintiff's] claims."); *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013) ("Although analysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto, a court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim."); *Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (noting that a book "was properly before the court on the motion to dismiss because [the plaintiff] referred to it in her complaint and it [was] central to her claims").

Thus, some of our cases have stated that a complaint must refer to the documents for the incorporation-by-reference doctrine to apply whereas other cases have not articulated such a requirement. Because this issue is dispositive as to whether the district court properly considered the body camera and dashcam footage in this case, we address which standard is the correct formulation under our precedent.

 [4]  [5]  [6]  [7]   To do so, we turn to the prior panel precedent rule, which provides that "each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court." *Breslow v. Wells Fargo Bank, N.A*, 755 F.3d 1265, 1267 (11th Cir. 2014) (quotations omitted). The holding of a case "is comprised both of the result of the case and those portions of the opinion necessary to that result." *Powell v. Thomas*, 643 F.3d 1300, 1304–05 (11th Cir. 2011) (quotations omitted). Dicta, on the other hand "is defined as those portions of an opinion that **\*1300** are not necessary to deciding the case then before us." *Id*. "When we have conflicting case law, we follow our oldest precedent."

🚩*Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019) (quotations omitted). Thus, in the instant matter, we must identify the first case in this circuit to consider the incorporation-by-reference doctrine where the complaint neither referred to the document at issue nor included the document as an attachment to the complaint. Only in that factual circumstance would it have been necessary for us to determine if the incorporation-by-reference doctrine requires the complaint to refer to the document at issue or attach it. The first case in this circuit to deal with this factual scenario is *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337 (11th Cir. 2005).

In *Maxcess*, the plaintiff brought nine different tort claims regarding alleged misrepresentations that the defendant made in committing fraud against the plaintiff. *Id.* at 1339–40. Despite the complaint not mentioning any contract, the district court relied on a Purchase Agreement between the parties, which included a 24-month limitation on the parties' ability to sue one another, to dismiss the complaint as time-barred. *Id.* at 1340 & n.3. The plaintiff argued on appeal "that the district court was barred from considering the Purchase Agreement when considering [the defendant's] motion to dismiss because it was not mentioned in, nor attached to, [the] complaint." *Id.* at 1340 n.3. We rejected this argument, determining that "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Id.* (citing 🚩*Horsley*, 304 F.3d at 1135). And because neither party disputed the authenticity of the Agreement and it was central to the plaintiff's claim, we concluded that "the district court properly considered the Purchase Agreement when ruling on [the defendant's] 12(b)(6) motion to dismiss." *Id.*

 [8]  Because *Maxcess* was the first case to resolve the issue before us, we must follow it in accordance with the prior panel precedent rule. Accordingly, when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged.[6] With the proper test in mind, we now apply this test to the facts at hand.

*2. Application of the incorporation-by-reference doctrine.*

 [9]  Here, the requirements of the incorporation-by-reference doctrine are easily **\*1301** satisfied. The body camera and dashcam footage clearly depict the events that are central to Johnson's claims. The bodycam footage shows Rolfe's interaction with Johnson from the time he pulled Johnson over through him placing Johnson in the back of his patrol vehicle. And although the bodycam footage does not show the technique or force Rolfe used in taking Johnson to the ground because Johnson's body blocks the lens during this timeframe, Rolfe's dashcam footage fills in this gap

and provides a clear view of the force and technique that Rolfe used in restraining Johnson. And Johnson does not argue that the videos were altered in any way or do not depict what actually happened; thus, he has not challenged their authenticity. Accordingly, we determine that the district court properly considered the body camera and dashcam videos in ruling on Rolfe's Rule 12(c) motion for judgment on the pleadings.

### B. Qualified immunity on the federal claims

[10] With it established that the district court properly considered Rolfe's body camera and dashcam footage, we now turn to whether the videos established that Rolfe was entitled to qualified immunity on Johnson's federal excessive force claim. See Baker, 67 F.4th at 1277–78 ("[W]here [the] video is clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account, and [we] view the facts in the light depicted by the video.") As explained below, we affirm the district court's determination that Rolfe is entitled to qualified immunity because no constitutional violation occurred.

[11] "Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they perform [in carrying out] their duties." Brooks v. Miller, 78 F.4th 1267, 1279 (11th Cir. 2023). "To determine whether qualified immunity applies, we engage in a burden-shifting analysis." Id. at 1280. The first step requires a defendant to show that he was acting within the scope of his discretionary authority when committing the challenged act. Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). "Once the defendant does that, the burden shifts to the plaintiff, who must show that qualified immunity is not appropriate." Miller, 78 F.4th at 1280. To show that qualified immunity is not appropriate, "the plaintiff must establish two things: (1) the defendant violated a constitutional right, and (2) that constitutional right was 'clearly established' at the time of the defendant's actions." Id. (quoting Powell v. Snook, 25 F.4th 912, 920 (11th Cir. 2022)). "Courts have 'discretion to decide which of the two prongs of the qualified-immunity analysis to tackle first.'" Id. (alteration adopted) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

Johnson does not dispute that Rolfe was operating within the scope of his discretionary authority when he placed Johnson under arrest. And for good reason. It is well established that an arrest of someone suspected of violating the law is within the discretionary authority of a police officer. See Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (noting it was clear that an officer "was acting within the course and scope of his discretionary authority when he charged and arrested [a suspect]"). Accordingly, the burden is on Johnson to establish that Rolfe violated a constitutional right in arresting him and that the right was clearly established at the time of Johnson's arrest. We begin and end our qualified immunity analysis by addressing the first requirement.

The Fourth Amendment provides a "right of the people to be secure in their **\*1302** persons ... against unreasonable ... seizures." U.S. Const. amend. IV. This right "encompasses the plain right to be free from the use of excessive force." *Lee*, 284 F.3d at 1197. The Fourth Amendment's objective reasonableness standard governs the excessive force inquiry. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "With respect to a claim of excessive force ... [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. 1865 (quotations and internal citation omitted).

"In determining the reasonableness of the force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). A court must look at the "totality of the circumstances" in making this assessment. *Tennessee v. Garner*, 471 U.S. 1, 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The Supreme Court has identified a non-exhaustive list of factors to consider under the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest for flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. We have said that "[o]ther considerations are the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in good faith or maliciously and sadistically." *Baker*, 67 F.4th at 1279. "The calculus of reasonableness must embody the allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865.

"Determining whether an officer's use of force is unconstitutionally excessive involves two steps." *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021). First, we must determine "whether the specific kind of force is categorically unconstitutional." *Id.* "Second, if the kind of force is not categorically unconstitutional," we must weigh the *Graham* factors to determine if the amount of force used was excessive. *Id.* Because "[w]e have never held that a tackle is a categorically unconstitutional kind of force," we must therefore proceed to the second step and determine if Rolfe's tackle was objectively reasonable. *Id.*

Johnson argues that the district court erred in determining that Rolfe's use of force was objectively reasonable. He asserts that the district court incorrectly determined that his injuries were *de minimis*

and that a proper weighing of the totality of the circumstances would have resulted in a finding that Rolfe's tackle was not objectively reasonable. We disagree.

For starters, the district court never determined that Johnson's injuries were *de minimis*. Instead, the district court found that "the level of force Rolfe used was *de minimis*" based on the totality of the circumstances. We agree.

While it is true that Johnson's underlying offense of driving under the influence of alcohol is a misdemeanor, *see* O.C.G.A. § 40-6-391(c), the remaining *Graham* factors all weigh in favor of finding that Rolfe's tackle was reasonable.

Rolfe pulled Johnson over late on a rainy night on I-85—a major highway—and attempted to get Johnson to perform various sobriety tests after discovering an **\*1303** open container under Johnson's seat. After Johnson was continuously noncompliant, Rolfe informed Johnson that he would have to place him under arrest based on the facts that Johnson (1) was clocked going 30 miles per hour over the speed limit in unsafe road conditions, (2) had an open container of alcohol in his car, and (3) was exhibiting signs of impairment. Rolfe then attempted to handcuff Johnson and repeatedly told him to place his hands behind his back and not to pull away. After continuing not to comply, Johnson resisted by jerking his right arm away from Rolfe, at which point Rolfe tackled Johnson to the ground. Given Johnson's inebriated state, the proximity to cars speeding by on a major interstate at night in wet conditions, and the risk of a multi-story fall off the ledge of the highway, Johnson's actions placed the lives of himself, Rolfe, his passenger, and other drivers on the highway in danger. There is no indication that Rolfe acted maliciously in tackling Johnson—indeed, Rolfe asked Johnson if he needed an ambulance when Johnson told Rolfe that his shoulder was dislocated. And while Johnson now alleges that his collarbone was broken in the tackle, he admits that his "injuries were not severe." Based on these facts, we find Rolfe did not use excessive force in detaining Johnson. *See Charles,* 18 F.4th at 699–700 (finding that an officer did not use excessive force when he made an arrest by tackling a suspect who ignored commands to place his hands behind his back and pulled away from the officer's grip to prevent handcuffing); *Durruthy v. Pastor,* 351 F.3d 1080, 1093–1095 (11th Cir. 2003) (determining that two arresting police officers did not use excessive force when they pulled an arrestee to the ground in an attempt to handcuff him).

**[12]** Because we conclude that Rolfe did not use excessive force in tackling Johnson, there was no constitutional violation. We therefore conclude at the first step of our analysis that Rolfe was entitled to qualified immunity, and we do not address the second prong—whether the law was clearly established. [7]

### C. Official Immunity on State-Law Claims

Johnson argues that the district court erred in granting Rolfe's motion for judgment on the pleadings on his state-law claims after determining that Rolfe was entitled to official immunity under Georgia law. He makes this argument because in his view, the videos show that Rolfe deliberately intended to injure Johnson. We again disagree.

[13] [14] [15] [16] Under Georgia law, "[t]he doctrine of official immunity ... offers public officers and employees limited protection from suit in their personal capacit[ies]." *Cameron v. Lang*, 274 Ga. 122, 549 S.E.2d 341, 344 (2001). Official immunity is a matter of the state constitution and establishes that officers carrying out their discretionary duties are "only subject to suit when performed with actual malice or intent to cause injury." *Barnett v. Caldwell*, 302 Ga. 845, 809 S.E.2d 813, 816 (2018) (citing Ga. Const. art. I, § 2, para. IX(d)). "In the context of Georgia's official immunity doctrine, 'actual malice' requires a deliberate intention to do wrong." *Wyno v. Lowndes Cnty.*, 305 Ga. 523, 824 S.E.2d 297, 304 (2019) (quotations omitted). "A 'deliberate intention to do wrong' such as to constitute the actual malice necessary to overcome official immunity must be the intent to **\*1304** cause the harm suffered by the plaintiffs." *Williams v. DeKalb Cnty.*, 308 Ga. 265, 840 S.E.2d 423, 434 (2020) (quotations omitted).

[17] It is clear from the video that Rolfe's tackle of Johnson was not done with the intent of injuring Johnson. Instead, Rolfe was attempting to arrest a noncompliant and resisting Johnson. As discussed above, immediately after securing Johnson, Rolfe helped him to his feet; and when Johnson expressed concerns regarding his shoulder, Rolfe asked him if he wanted Rolfe to call an ambulance. Nothing in this interaction indicates that Rolfe intended to injure Johnson when he tackled him. Accordingly, Rolfe is entitled to official immunity on Johnson's state-law claims. *See Tittle v. Corso*, 256 Ga.App. 859, 569 S.E.2d 873, 876–78 (2002) (concluding that an officer was entitled to official immunity where his use of profanity, his threat to hurt the plaintiff if the plaintiff moved, and his act of "slamming" the plaintiff against his patrol care were insufficient to establish "actual malice").

### IV. Conclusion

Based on the prior panel precedent rule, we conclude that the incorporation-by-reference doctrine allows a court to consider documents outside the complaint so long as the documents are central to the plaintiff's claims and the authenticity of the documents are undisputed. Because both of these requirements were met for Rolfe's body camera and dashcam footage, the district court properly considered their contents in ruling on Rolfe's motion for judgment on the pleadings. Furthermore, the contents of the videos establish that no constitutional violation occurred because Rolfe did not use excessive force in tackling Johnson to the ground and that Rolfe was entitled to official immunity on Johnson's state-law claims. And, because there was no constitutional

violation, Johnson's related *Monell* claim necessarily failed. Accordingly, we affirm the district court's order.

**AFFIRMED**.

**All Citations**

107 F.4th 1292, 119 Fed.R.Serv.3d 243, 30 Fla. L. Weekly Fed. C 1128

---

### Footnotes

1    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

2    Because of the manner in which the complaint was drafted, in particular its sparse allegations, the district court was forced to interpret what claims Johnson was bringing. It found that Count I alleged "constitutional claims (United States and Georgia) for unreasonable search and seizure and abuse of arrestees plus a state law claim for battery" against Rolfe; Count II alleged a "failure to supervise [claim] against the City;" Count III alleged a "constitutional claim (Georgia) for unreasonable search and seizure and a willful intent to injure" against Rolfe; Count IV alleged a "constitutional claim (Georgia) for abuse" against Rolfe; and Count V alleged a state law battery claim against Rolfe. No party challenges this determination on appeal. For simplicity, this appeal will refer to Johnson's claims as the federal claims and the state-law claims, respectively.

3    In *Monell*, the Supreme Court held that municipalities and other local governments may be held directly liable under § 1983 for constitutional violations if the injury stems from the government's enforcement of a policy or custom. See *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. To state a *Monell* claim, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

4    Johnson did not discuss the dashcam footage, which shows a clear view of the tackle in question.

5    The district court also determined that even if Rolfe had used excessive force, he would nevertheless be entitled to qualified immunity on the independent basis that the law was not clearly established that Rolfe's use of force was excessive at the time of Johnson's arrest.

6    Many of our opinions that have articulated the additional requirement that the complaint must refer to the document at issue have cited to *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997), in support of this requirement. *See, e.g.*, *Baker*, 67 F.4th at 1276; *Hi-Tech Pharms., Inc.*, 910 F.3d at 1189; *Starship Enters.*, 708 F.3d at 1252 n.13. But the portion of *Brooks* that those cases have relied upon is not Eleventh Circuit precedent. In *Brooks*, we summarily affirmed "[t]he district court's grant of summary judgment ... based upon the holdings and rationale contained in Part III.A of the district court's ... order," a copy of which we attached as an appendix to our opinion. *Brooks*, 116 F.3d at 1365. We explicitly stated that "[w]e ha[d] no occasion to reach the remaining issues addressed in other parts of that order and impl[ied] no view concerning any of them." *Id.* The portion of *Brooks* that many of our opinions have relied upon for the additional requirement that the complaint must reference the document at issue for the incorporation-by-reference doctrine to apply appears in Part II.A of the district court's order, a portion we explicitly did not adopt. *See id.* at 1368–69.

7    Because we find that no underlying constitutional violation occurred, we likewise determine that the district court properly dismissed Johnson's *Monell* claim against the City. *See Miller v. Harget*, 458 F.3d 1251, 1261 (11th Cir. 2006) ("Because [the plaintiff] has failed to establish that his constitutional rights were violated, he has necessarily failed to establish the City's liability.").

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.